FILED
3/1/2021 3:42 PM
Mary Angie Garcia
Bexar County District Clerk
Accepted By: Maria Jackson

Case 1:21-cv-00331-DH    Document 1-1    Filed 03/11/21    Page 1 of 36

# 2021CI03695

CAUSE NO.: _____

| | | |
|---|---|---|
| DOUGLAS RAMSEY | § | IN THE DISTRICT COURT |
| V. | § | **224th** ___ JUDICIAL DISTRICT |
| SHEET PILE, LLC | § | BEXAR COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION
## AND REQUEST FOR TEMPORARY RESTRAINING ORDER

TO THE HONORABLE JUDGE OF THIS COURT:

COMES NOW, the Plaintiff, Douglas Ramsey, and makes and files this Original Petition and Request for Temporary Restraining Order against Defendant Sheet Pile, LLC, and would respectfully show the Court as follows:

### I.    DISCOVERY-CONTROL PLAN

1. Plaintiff intends to conduct discovery under Level 2 of TEXAS RULE OF CIVIL PROCEDURE 190.3 and affirmatively pleads that this suit is not governed by the Expedited Actions Process in TEXAS RULE OF CIVIL PROCEDURE 169 because Plaintiff seeks injunctive relief.

### II.    RELIEF SOUGHT

2. Plaintiff seeks monetary relief of $250,000.00 or less and non-monetary relief.

### III.    PARTIES

3. Plaintiff is Douglas Ramsey, an individual resident of Texas, who may be reached through the undersigned counsel.

4. Defendant is Sheet Pile, LLC, a New Hampshire Limited Liability Company with its primary place of business at 27-B Heal Drive, Rumney, New Hampshire 03266. No service of process on Defendant is necessary at the time of this filing because it is believed that Defendant's Attorney, Mr. Kevin Terrazas, will accept service of process. Moreover, Defendant waived

personal service of process. A copy of this petition will be mailed to Borrower pursuant to the Contractual agreement.

### IV.    JURISDICTION & VENUE

5.    The Court has personal jurisdiction over the Defendant, a non-resident, because the Defendant engaged in business in Texas by contracting with a Texas Resident. The Contract was to be performed in whole or in part in Texas by both parties. Moreover, the Contract provides all actions or proceedings arising in connection with the transaction shall be tried in the State of Texas. Defendant waived all rights to assert objections to Venue and consented to any court ordered relief.

6.    Venue for this suit is permissive in Bexar County, Texas pursuant to paragraph 11(h) of the Security Agreement that is the subject of this Breach of Contract suit, which states that Venue is proper in any state or Federal Court located in the State of Texas. Moreover, the Defendant waived any right to object to venue.

### V.    FACTS

7.    Plaintiff was the Chief Financial Officer of a variety of companies owned by Mr. Roberto Redondo Wendt from January 2013 through December 2019, including PilePro Steel LP, PilePro LLC, iSheetPile, LLC, and Defendant, Sheet Pile, LLC.

8.    Unfortunately, Defendant Sheet Pile, LLC experienced some financial difficulty and sought a $100,000.00 loan from the Plaintiff so that a payment deadline with a Federal Bankruptcy Court could be met.

9.    On November 21, 2019, Plaintiff personally loaned Defendant $100,000.00 and entered into a Secured Promissory Note and a security Agreement. A true and correct copy of the Promissory Note is attached as ***Exhibit A*** and incorporated by reference. A true and correct copy of the Security Agreement is attached as ***Exhibit B*** and incorporated by reference.

10. The sum of $100,000.00 was transferred into the Defendant's account. Defendant represented to Plaintiff that this $100,000.00 was the only funding that could be acquired in a short time frame in order to keep Defendant operating.

11. The short bridge loan that is the subject of this suit was deemed vital to continue operations while Defendant was in the processing of acquiring several large purchase orders which would revitalize the business.

12. In oral communications between Plaintiff and Mr. Wendt, the loan was to have a maturity date of December 21, 2019, or one month after it was made. The maturity date was acknowledged verbally on various occasions by both Mr. Wendt, and his attorney.

13. Unfortunately, in the urgent drafting of the documents, the maturity date was listed as December 21, 2020. Instead of paying the loan back in December 2019, Defendant terminated the relationship with Plaintiff, eliminated Plaintiff's access to his company emails, and wholly ceased communicating with Plaintiff.

14. Upon realizing that the loan documents contained an improper maturity date, Plaintiff sought advice of counsel and elected to wait until December 2020 for payment.

15. On December 10, 2020, Plaintiff sent Defendant's counsel, Mr. Kevin Terrazas, a courtesy reminder that full payment on the loan was coming due on December 21, 2020. A true and correct copy of this reminder is attached as **_Exhibit C_** and incorporated by reference. The same was sent via certified mail to Defendant and Mr. Terrazas.

16. Between December 10, 2020 and December 22, 2020, Plaintiff exchanged various correspondences with Defendant's attorney regarding a proposed repayment plan of the loan and agreed to waive additional interest if the full sum could be paid by December 31, 2020. _See_ **_Exhibit D_**.

17. Unfortunately, December 21, 2020 came and went, and so did December 31, 2020, without any payment to Plaintiff.

18. Defendant's counsel made various promises and ultimately concluded with a claim that he was "still waiting on Rob" on January 4, 2021. *See* **Exhibit D.** After this correspondence, no further communications were received.

19. On January 8, 2021, Plaintiff sent a final demand letter by certified mail to both Defendant and its attorney. *See* **Exhibit E**.

20. Pursuant to Paragraph 5 of the Promissory Note, Defendant has defaulted on the note because Defendant failed to pay any payment of principal or interest within ten (10) days of the due date. *See* **Exhibit A**, paragraph 5(i). Defendant's default, despite numerous notices, has remained in existence for more than ten (10) days. Defendant is further in default of the terms of Paragraph 7 of the Security Agreement which states that the occurrence of any event of default defined in the Note will be deemed a default of the Security Agreement.

21. Further, pursuant to the Security Agreement, the Plaintiff was given a security interest in the following:

   a. All open Receivables of Defendant as of November 21, 2019;

   b. All Receivables due from Samuel Roll Form Group PO 2PP004775;

   c. All current inventory of Defendant as of November 21, 2019; and

   d. All equipment, tools, machinery, and other supplies held by Defendant.

22. With regard to the collateral, Defendant was obligated to keep accurate and complete records of all collateral, to protect the collateral, and to notify Plaintiff if any other claims were asserted against the collateral. Moreover, Defendant was not permitted to lose possession of, sell, lease, rent, or otherwise dispose of or transfer any of the collateral.

23. Upon information and belief, however, the Defendant has taken specific action to dispose of the collateral in violation of the Security Agreement.

24. Defendant has further impaired Plaintiff's ability to exercise his right to secure and sell the collateral pursuant to the Security Agreement.

25. Mr. Wendt, historically, has taken specific action to thwart previous creditor's rights and ability to recover. For example, Mr. Wendt repeatedly changes company names, files for bankruptcy to shed debt, and swaps bank accounts often to keep small balances distributed.

26. A high probability exists that if Defendant's assets are not frozen by this Court, Plaintiff's chances at recovering such assets would be dramatically limited.

## VI.    COUNT I – BREACH OF CONTRACT

27. On November 21, 2019, Plaintiff and Defendant executed a valid and enforceable written contract in the form of a Promissory Note and a Security Agreement (together the "*Contract*"), a copy of which are attached as *Exhibit A* and *Exhibit B*.

28. Pursuant to the Contract, Plaintiff would lend Defendant the sum of $100,000.00 and Defendant would repay the principal sum together with interest by December 21, 2020.

29. Plaintiff fully performed his obligations by transferring the sum of $100,000.00 to the Defendant.

30. Defendant breached the contract by failing to repay the principal amount of the loan, or any interest that had accrued thereon.

31. Defendant further breached the contract by disposing of the collateral used to protect Plaintiff's interests.

32. Defendant's breach caused injury to Plaintiff which has resulted in the loss of its $100,000.00 in principal and interest thereon. Plaintiff's injury further includes lost profits, cost of delay in performance, cost of mitigation, reliance, and restitution.

33.    Defendant seeks liquidated damages within the jurisdictional limits of this Court.

34.    Plaintiff is entitled to recover reasonable and necessary attorney fees under the provisions of the written contract as set out in section 8 which provides that Defendant is entitled to recover all reasonable costs and expenses of collection, including attorney fees.

## VII.    COUNT II – FRAUD

35.    In November 2019, the Defendant represented to the Plaintiff that if he lent Defendant the sum of $100,000.00 in order to keep Defendant afloat, that Defendant would immediately pay such sum back, together with interest.

36.    Defendant's representation to Plaintiff was material because Plaintiff relied on such representation and liquidated assets to compile the sum of $100,000.00 and did in fact transfer such sum to the Defendant. Defendant further represented that it would keep assets sufficient to secure the loan.

37.    Upon information and belief, Defendant's representation to Plaintiff was false statement of fact because Defendant had no intention or ability to repay the loan once the money was received. Moreover, Defendant had no intention of keeping assets secured for over a year in order to repay the loan.

38.    Defendant's representations were a false statement of fact, and a false representation of future performance.

39.    Defendant's false representation directly and proximately caused injury to Plaintiff, which resulted in the damages identified above.

40.    Plaintiff seeks damages within the jurisdictional limits of this Court.

41.    Plaintiff's injury resulted from Defendant's actual fraud, gross negligence, or malice, which entitles Plaintiff to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE section 41.003(a).

## VIII.   REQUEST FOR TEMPORARY RESTRAINING ORDER

42.    Plaintiff asks the Court to issue a Temporary Ex Parte Restraining Order preventing the Defendant from selling any property or otherwise disposing of any assets related in any manner to the operations of Defendant, including inventory.

43.    Plaintiff's application for a Temporary Restraining Order is authorized by TEXAS CIVIL PRACTICE & REMEDIES CODE §65.011 because if Defendant is not restrained from disposing of its assets, it is likely that Plaintiff will not be able to recover funds that are justly owed to him. Plaintiff's application is further authorized by the terms of the Security Agreement, a copy of which is attached as **Exhibit B** which gives Plaintiff an interest in the Collateral.

44.    It is probable that Plaintiff will recover from Defendant after a trial on the merits because Plaintiff fully complied with the terms of the Contract and Defendant clearly breached the contract by failing to repay the loan.

45.    If Plaintiff's application is not granted, harm is imminent because Defendant will continue to dispose of assets so as to become judgment proof.

46.    The harm that will result if the Temporary Restraining Order is not issued is irreparable because Plaintiff will have lost his $100,000.00 and will have no plausible way to recover the funds.

47.    There is not enough time to serve notice on Defendant and to hold a hearing on this application because Plaintiff believes that Defendant is already disposing of assets and has a historical tendency of disposing of assets to avoid creditors.

## IX.     TEMPORARY INJUNCTION

48.    Plaintiff asks the Court to set his Application for Temporary Injunction for a hearing and, after the hearing, issue a temporary injunction against Defendant. Plaintiff further asks the

Court, upon final trial, to convert the Temporary Injunction into a Permanent Injunction so as to satisfy any debts owed to Plaintiff.

## X.    CONDITIONS PRECEDENT

49.    All conditions precedent to Plaintiff's claim for relief have been performed or have occurred.

## XI.    PLAINTIFF'S INITIAL DISCLOSURES

50.    Pursuant to Rule 194 of Texas Rule of Civil Procedure, Plaintiff makes the following disclosures:

51.    Disclosures pursuant to Rule 194.2:

    a.    Plaintiff believes the parties are named correctly in the Style and in Paragraph III.3 and III.4 above.

    b.    The name and address of a potential party is: Roberto Redondo Wendt, 701 Margarita Ave., Coronado, CA 92118.

    c.    The legal theories and factual basis for Plaintiff's claims is outlined above in Paragraphs V – VII above.

    d.    Plaintiff's damages as of the filing of this suit are:
        i.    Principal Damages of $115,351.71 calculated as:
            1.    Principal $100,000.00
            2.    Flat Interest: $10,000.00
            3.    Monthly Interest: 13 months at $411.67/mo = $5,351.71
        ii.    Prejudgment Interest
        iii.    Post Judgment Interest.
        iv.    Attorney fees of approximately $2,000 as of the date of this filing.

    e.    The persons having knowledge of relevant facts are:
        i.    Roberto Redondo Wendt, c/o Kevin Terrazas;
        ii.    Kevin Terrazas
        iii.    Douglas Ramsey

    f.    All documents in Plaintiff's possession relevant to this case and which may be used to support its claims are contained as attachments to this filing. Additional emails may exist via Plaintiff's email account and will be supplemented.

    g.    To Plaintiff's knowledge, there are no indemnity or insuring agreements in existence relevant to this claim.

    h.   Defendant's counsel had previously drafted a settlement agreement; however, such is unsigned.

    i.   Plaintiff is currently not aware of any witness statements.

    j.   Medical records are not pertinent to this claim.

    k.   Medical records are not pertinent to this claim.

    l.   Roberto Redondo Wendt may be designated as a responsible third party.

52.    Pursuant to TEXAS RULE OF CIVIL PROCEDURE 194.3, at this time Plaintiff is not aware of any testifying experts.

## XII.   PRAYER

WHEREFORE, Plaintiff prays the Court enter a temporary ex-parte restraining order against Defendant freezing assets, set a hearing on Plaintiff's Motion for Temporary Injunction, enter a Temporary Injunction, and upon trial on the merits on this matter, award Plaintiff a judgment against the Defendant for actual damages, prejudgment and postjudgment interest, costs of Court, attorney fees, and any and all other relief to which Plaintiff may show himself justly entitled.

Respectfully submitted,

SHUMWAY VAN

GERRIT SCHULZE   (TBN: 24084877)
13750 San Pedro Avenue, Suite 810
San Antonio, Texas 78232
(210) 503-2800 phone
(210) 503-2888 facsimile
Gerrit@Shumwayvan.com

**ATTORNEYS FOR PLAINTIFF**

CAUSE NO.: _____

| | | |
|---|---|---|
| DOUGLAS RAMSEY | § | IN THE DISTRICT COURT |
| | § | |
| V. | § | ___ JUDICIAL DISTRICT |
| | § | |
| SHEET PILE, LLC | § | BEXAR COUNTY, TEXAS |

## AFFIDAVIT OF DOUGLAS RAMSEY

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF BEXAR | § |

BEFORE ME, the undersigned notary, on this day personally appeared the affiant, Mr.

Douglas Ramsey, whose identity is known to me. After being administered an oath, affiant testified as

follows:

1.    My name is Douglas Ramsey, I am over the age of 18, of sound mind, and capable of making this affidavit. The facts in it are within my personal knowledge and are true and correct.

2.    I was the chief financial officer of PilePro Steel, LP, PilePro LLC, iSheetPile LLC, and Sheet Pile LLC from January 2013 through December 2019. Each of these entities was or is owned by Mr. Roberto Redondo Wendt.

3.    In November 2019, I personally loaned Sheet Pile LLC $100,000.00.

4.    I loaned this to the company at Mr. Wendt's request so that he could meet a payment deadline with a trustee in a bankruptcy case on Mr. Wendt's PilePro LLC company, so that Mr. Wendt could retain his viability in the Steel Sheet Piling industry with Sheet Pile LLC.

5.    At the time, this seemed to be the only funding which could be acquired in a short timeframe in order to keep Sheet Pile LLC going.

6.    Sheet Pile LLC was in the process of acquiring several large purchase orders at the time, and this short bridge loan was deemed vital to continue operations during the waiting period.

7.    The month after I made this loan to Mr. Wendt and Sheet Pile LLC, a few days before the loan was supposed to be due, I was suddenly terminated.

8.    The loan was secured by a Security Agreement and Secured Promissory Note.

9.    The loan was to have had a Maturity Date of December 21, 2019 per our discussions, however in the urgent drafting of the agreements, the Maturity Date was accidentally listed as December 21, 2020.

10.    I believe that Mr. Wendt and his attorney, Kevin Terrazas, were fully aware that the date was to be in 2019 because they had acknowledged that verbally to me during our discussions.

11.    The goal was for this loan to be repaid almost immediately, with interest, through funding received on a very large Purchase Order which Sheet Pile was getting from a very established customer.

12.    Throughout 2020, I had various conversations with Mr. Kevin Terrazas regarding repayment of the loan and forwarded him accountings of the interest accruing under the note.

13.    Between December 10, 2020 and December 22, 2020, I exchanged various emails with Mr. Kevin Terrazas regarding a proposed payment schedule.

14.    As of the date of this affidavit, I have not received payment of any principal or interest on the Loan. Moreover, neither Mr. Wendt nor Mr. Terrazas will respond to my correspondences.

15.    Pursuant to the Security Agreement, the collateral for the Loan includes:
    a.    All open receivables of Sheet Pile LLC as of the date of the agreement.
    b.    All Receivables due and open on Samuel Roll Form Group PO 2PP004775.
    c.    All current inventory of Sheet Pile, LLC (including steel in stock or in production, and Wadit sealant).
    d.    All equipment, tools, machinery, and other supplies held by Borrower.

16.    Based on my personal knowledge of the past actions of Mr. Wendt, and my personal knowledge of the manner in which he operates his businesses, it is my belief that Mr. Wendt intends to and will continue to dispose of assets and reduce cash on hand in an effort to avoid paying his obligations to me.

17.    Specifically, Mr. Wendt has shown a history of changing his companies so as to avoid liabilities. For example, PilePro – Made in USA, LLC has had five different names in five years.

18.    PilePro, LLC, another of Mr. Wendt's companies, filed for bankruptcy in 2019 to shed over 1.5 million dollars in debt owed to law firms and other creditors around the U.S.

19.    Mr. Wendt creates a collection of companies in order to transfer assets between them and create licenses for the various companies to do business with one another. This allows the companies the guise of success but limits their individual exposure when creditors pursue money owed to them.

20.    Mr. Wendt's companies have at least a dozen bank accounts throughout the United States which were created to keep small balances distributed among them in an effort to avoid liability and seizure by creditors.

21.    To the best of my knowledge, Mr. Wendt has already moved inventory and equipment of the entity to a different location in violation of the notice provisions of the Promissory Note and Security Agreement.

22.    If the assets are not restrained from being disposed of, I fear that it will be impossible for me to recover my money."

Douglas Ramsey, *Affiant*

SWORN TO and SUBSCRIBED TO before me on this _11th_ day of _February_, 2021 by the affiant, Douglas Ramsey.

Notary Public, State of Texas



HECTOR QUINTANILLA
ID #124256045
My Commission Expires
June 26, 2022

EXHIBIT A: PROMISSORY NOTE

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 (THE "SECURITIES ACT"), OR REGISTERED OR QUALIFIED UNDER ANY STATE SECURITIES LAWS, BECAUSE OF RELIANCE ON AN EXEMPTION FOR REGISTRATION. THIS NOTE MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED WITHOUT REGISTRATION UNDER THE SECURITIES ACT OR REGISTRATION OR QUALIFICATION UNDER SUCH STATE SECURITIES LAWS, UNLESS THE PROPOSED TRANSACTION DOES NOT REQUIRE SUCH REGISTRATION OR QUALIFICATION.

## SECURED PROMISSORY NOTE

$100,000.00                                                         November 21, 2019
                                                                   Austin, Texas

FOR VALUE RECEIVED, Sheet Pile, LLC, a New Hampshire limited liability company and its successors and assigns ("Borrower"), hereby promises to pay to the order of Douglas Ramsey, an individual whose address is 2817 Geronimo Trail, Austin TX 78734, and its successors and assigns (sometimes referred to as the "Lender" or "Holder", according to the context), the principal sum of One Hundred Thousand and no/100 Dollars ($100,000.00). The "value received" is that Lender will transfer $100,000.00 to the recipient account of the Borrower's choosing no later than 25-November, 2019.

1.     Use of Proceeds.  Funds provided to Borrower pursuant to this Note shall be used for a specific and confidential payment commitment which Borrower must pay by November 26, 2019. All amounts due hereunder are secured by that certain Security Agreement between Borrower and Lender of even date herewith (the "Security Agreement").

2.     Interest.  The principal amount of this Note shall bear interest ("Interest") which shall be the sum of (i) $10,000, as a one-time, flat rate, interest payment, and (ii) the cost of all interest, costs and fees associated with Borrower's personally secured funds. Interest will begin accruing on any unpaid principal balance of this Note beginning on November 21, 2019.

3.     Payment of Principal  All outstanding amounts shall be due and payable on demand on December 21, 2020 ("Maturity"). Any unpaid principle or interest will continue accruing interest on at an additional flat rate of $1000 per month (or portion of month) after the Maturity Date. Both principal and Interest are payable at the address designated in Section 14 or such other place as Holder may from time to time designate in writing. All payments made under this Note shall be payable in lawful money of the United States of America which shall be legal tender for public and private debts at the time of payments.

4.     Prepayment  Principal and/or Interest on this Note may be prepaid in whole or in part at any time, save and except in the event that Borrower is the subject of a filing under any provision of Title 11 of the United States Code. At latest, repayment is to occur from fulfillment of customers' current and future orders, once funds have been wholly or partially received from those projects (including through Flash funding or other funding sources. Any prepayment hereunder shall be applied first against any accrued Interest and costs/fees, and then against principal.

5.     Default; Remedies .

       (a)     Borrower shall be in default under this Note upon the happening of any



1

condition or event set forth below (each, an "Event of Default"):

        (i)     Borrower's failure to pay any payment of principal or interest as and within ten (10) days of when due in accordance with the terms of this Note;

        (ii)    Default by Borrower in the punctual performance of any other obligation, covenant, term or provision contained in this Note, and such default shall continue unremedied for a period of ten (10) days or more following written notice of default by Holder or a successor holder hereof to Borrower;

        (iii)   any warranty, representation, financial statement or other information furnished to Holder by or on behalf of Borrower in connection with this Note or to induce Holder to make the loan reflected by this Note proves to have been false in any material respect when made or furnished; or

        (iv)   Borrower's insolvency, dissolution, liquidation or business failure; the appointment of a receiver of all or any part of Borrower's property; an assignment for the benefit of creditors by Borrower; or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or any guarantor, surety or endorser for Borrower which results in the entry of an order for relief or which remains undismissed, undischarged or unbonded for a period of sixty (60) days or more.

        (b)     The entire unpaid principal balance of this Note and all accrued interest thereon shall immediately be due and payable at the option of the Holder hereof upon the occurrence of any one or more of the Events of Default and at any time thereafter.

    6.     Cumulative Rights. No delay on the part of the holder of this Note in the exercise of any power or right under this Note or under any other instrument executed pursuant hereto shall operate as a waiver thereof, nor shall a single or partial exercise of any power or right preclude other or further exercise thereof or the exercise of any other power or right.

    7.     Waiver. Borrower and all endorsers, sureties and guarantors of this Note waive demand, presentment, protest, notice of dishonor, notice of nonpayment, notice of intention to accelerate or notice of acceleration (other than notice of default pursuant to paragraph 2(a)(ii)), notice of protest and any and all lack of diligence or delay in collection or the filing of suit hereon which may occur, and agree to all extensions and partial payments, before or after maturity, without prejudice to the holder hereof.

    8.     Attorney's Fees and Costs. In the event that this Note is collected in whole or in part through suit, arbitration, mediation, or other legal proceeding of any nature, then and in any such case there shall be added to the unpaid principal amount hereof all reasonable costs and expenses of collection, including, without limitation, reasonable attorney's fees.

    9.     Governing Law. This Note shall be governed by and construed in accordance with the internal laws of the Texas, USA.

    10.   Headings. The headings of the sections of this Note are inserted for convenience only and shall not be deemed to constitute a part hereof.

2

11.     Usury. All agreements between Borrower and the holder of this Note, whether now existing or hereafter arising and whether written or oral, are expressly limited so that in no contingency or event whatsoever, whether by acceleration of the Maturity of this Note or otherwise, shall the amount paid, or agreed to be paid, to the holder hereof for the use, forbearance or detention of the money to be loaned hereunder or otherwise, exceed the maximum amount permissible under applicable law. If from any circumstances whatsoever fulfillment of any provision of this Note or of any other document evidencing, securing or pertaining to the indebtedness evidenced hereby, at the time performance of such provision shall be due, shall involve transcending the limit of validity prescribed by law, then *ipso facto*, the obligation to be fulfilled shall be reduced to the limit of such validity, and if from any such circumstances the holder of this Note shall ever receive anything of value as interest or deemed interest by applicable law under this Note or any other document evidencing, securing or pertaining to the indebtedness evidenced hereby or otherwise an amount that would exceed the highest lawful rate, such amount that would be excessive interest shall be applied to the reduction of the principal amount owing under this Note or on account of any other indebtedness of Borrower to the holder hereof relating to this Note, and not to the payment of interest, or if such excessive interest exceeds the unpaid balance of principal of this Note and such other indebtedness, such excess shall be refunded to Borrower. In determining whether or not the interest paid or payable with respect to any indebtedness of Borrower to the holder hereof, under any specific contingency, exceeds the highest lawful rate, Borrower and the holder hereof shall, to the maximum extent permitted by applicable law, (i) characterize any non-principal payment as an expense, fee or premium rather than as interest, (ii) amortize, prorate, allocate and spread the total amount of interest throughout the full term of such indebtedness so that the actual rate of interest on account of such indebtedness is uniform throughout the term thereof, and/or (iii) allocate interest between portions of such indebtedness, to the end that no such portion shall bear interest at a rate greater than that permitted by law. The terms and provisions of this paragraph shall control and supersede every other conflicting provision of all agreements between Borrower and the holder hereof.

12.     Successors and Assigns. This Note may be sold, transferred or otherwise assigned by Holder with the prior written consent of Borrower, which shall not be unreasonably withheld or delayed. All of the stipulations, promises and agreements in this Note made by or on behalf of Borrower shall bind the successors and assigns of Borrower, whether so expressed or not, and inure to the benefit of the successors and permitted assigns of Holder.

13.     Severability. In the event any one or more of the provisions contained in this Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision hereof, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

14.     Notices. All notices and other communications hereunder shall be in writing or by telecopy or email, provided that such notices shall be deemed to have been duly made when delivered in person or by facsimile transmission with appropriate receipt or by express courier such as Federal Express, ninety-six (96) hours after having been picked up by or delivered to said express courier, with all delivery charges prepaid.  Notices shall be sent:

If to Holder:
Douglas Ramsey
2617 Geronimo Trail
Austin, TX 78734



3

If to the Borrower:
    Sheet Pile, L.L.C.
    c/o Roberto Redondo Wendt
    701 Margarita Avenue
    Coronado. CA 92113

IN WITNESS WHEREOF, the undersigned has executed this Note on and as of the date first above written.

Sheet Pile, LLC

By:_____

Roberto Redondo Wendt
Member

4

EXHIBIT B: SECURITY AGREEMENT

# SECURITY AGREEMENT

**THIS SECURITY AGREEMENT** (the "Agreement") made as of November 21, 2019, by and among Sheet Pile, LLC, a New Hampshire limited liability company (the "Borrower"), with its primary place of business at 27-B Heal Drive, Rumney, New Hampshire 03266 (and secondary place of business 49 South Mayhew Turnpike, Hebron, New Hampshire, 03241) on the one hand, and Douglas Ramsey, an individual who holds the Note (as defined below) (the "Secured Party") on the other hand:

The Borrower and the Secured Party hereby agree as follows:

1.    <u>Certain Definitions</u>.

(a)    "Collateral" shall mean the property described on <u>Exhibit A</u> hereto.

(b)    "Lien" means any lien (statutory or other), mortgage, pledge, hypothecation, assignment, deposit arrangement, security interest, charge, claim or other encumbrance of any kind (including any conditional sale or other title retention agreement, any lease in the nature thereof, and any agreement to give any security interest) and any agreement to give or refrain from giving a lien, mortgage, pledge, hypothecation, assignment, deposit arrangement, security interest, charge, claim or other encumbrance of any kind.

(c)    "Note" means that certain secured promissory note of even date herewith issued by Borrower to Secured Party in the principal amount of $100,000.00.

2.    <u>Security Agreement</u>.

(a)    <u>Grant</u>. Borrower, for valuable consideration, the receipt of which is acknowledged, hereby grants to the Secured Party a first priority security interest in and Lien on all of the Collateral now owned or at any time hereafter acquired by the Borrower or in which the Borrower now has or at any time in the future may acquire any right, title or interest.

(b)    <u>Borrower Remains Liable</u>.  Anything herein to the contrary notwithstanding, (i) the Borrower shall remain liable under any contracts, agreements and other documents included in the Collateral, to the extent set forth therein, to perform all of its duties and obligations thereunder to the same extent as if this Agreement had not been executed, (ii) the exercise by the Secured Party of any of the rights hereunder shall not release the Borrower from any of its duties or obligations under such contracts, agreements and other documents included in the Collateral and (iii) the Secured Party shall not have any obligation or liability under any contracts, agreements and other documents included in the Collateral by reason of this Agreement, nor shall the Secured Party be obligated to perform any of the obligations or duties of the Borrower thereunder or to take any action to collect or enforce any such contract, agreement or other document included in the Collateral hereunder.

(c)    <u>Continuing Security Interest</u>.    The Borrower agrees that this Agreement shall create a continuing security interest in the Collateral which shall remain in effect until indefeasible payment and performance in full of all of the Obligations (as defined below).

3.    <u>Obligations Secured</u>.    The security interests granted hereby secure payment of all amounts owed pursuant to the Note issued by the Borrower to the Secured Party (the "<u>Obligations</u>").

4.    <u>Borrower's Representations, Warranties and Covenants</u>.  Borrower hereby represents, warrants and covenants to the Secured Party that:

(a)    Borrower's principal place of business are the addresses set forth above and Borrower keeps its records concerning accounts, contract rights and other property at those locations.  Borrower will promptly notify the Secured Party in writing of the establishment of any new place of business where any of the Collateral is kept.  Borrower is a limited liability company organized under the laws of New Hampshire.  Borrower will notify the Secured Party prior to changing its form or jurisdiction of organization.

(b)    Borrower will at all times keep in a manner reasonably satisfactory to the Secured Party accurate and complete records of the Collateral and will keep such Collateral insured to the extent similarly situated companies insure their assets.  The Secured Party shall be entitled, at reasonable times and intervals after reasonable notice to Borrower, to enter Borrower's premises for purposes of inspecting the Collateral and Borrower's books and records relating thereto.

(c)    Except for the First Lien, Borrower will not create or permit to be created or suffer to exist any Lien of any kind on any of the Collateral, unless Secured Party approves, in writing, such Lien (the "<u>Permitted Liens</u>").

(d)    Borrower shall not use the Collateral in material violation of any applicable statute, ordinance, law or regulation or in material violation of any insurance policy maintained by Borrower with respect to the Collateral; <u>provided</u> that the Borrower may contest any such violation, statute, ordinance, law or regulation in a reasonable manner.

(e)    <u>Other Financing Statements</u>.  Other than financing statements, security agreements, chattel mortgages, assignments, copyright security agreements or collateral assignments, patent or trademark security agreements or collateral assignments, fixture filings and other agreements or instruments executed, delivered, filed or recorded for the purpose of granting or perfecting any Lien (collectively, "<u>Financing Statements</u>") existing as of the date hereof and disclosed to the Secured Party or arising after the date hereof in connection with any Permitted Lien and Financing Statements in favor of the Secured Party, no effective Financing Statement naming the Borrower as a debtor, assignor, grantor, mortgagor, pledgor or the like and covering all or any part of the Collateral is on file in any filing or recording office in any jurisdiction.

(f)    <u>Notices, Reports and Information</u>.  The Borrower will (i) notify the Secured Party of any material claim made or asserted against the Collateral by any person or

SECURITY AGREEMENT

2

entity and of any change in the composition of the Collateral or other event which is reasonably likely to materially adversely affect the value of the Collateral or any Secured Party's Lien thereon; (ii) furnish to the Secured Party such statements and schedules further identifying and describing the Collateral and such other reports and other information in connection with the Collateral as any Secured Party may reasonably request, all in reasonable detail; and (iii) upon request of any Secured Party make such demands and requests for information and reports as the Borrower is entitled to make in respect of the Collateral.

(g)    Disposition of Collateral. The Borrower will not (i) surrender or lose possession of (other than to the Secured Party), sell, lease, rent, or otherwise dispose of or transfer any of the Collateral or any right or interest therein, except to the extent permitted by this Agreement, or (ii) remove any of the Collateral from its present location within the State of New Hampshire or any other state or country in which the Borrower may presently hold Collateral (other than disposals of Collateral permitted by subsection (i)); in either such case, except upon at least thirty (30) days' prior written notice to the Secured Party.

5.    Financing Statements. To the fullest extent permitted by applicable law, the Borrower authorizes the Secured Party, and any agent acting on behalf of the Secured Party, to file any Financing Statements, without the signature of the Borrower, necessary or appropriate to perfect the security interests granted herein.

6.    Borrower's Rights Until Default. So long as an Event of Default does not exist, Borrower shall have the right to possess the Collateral, manage its property and sell or otherwise consume its inventory in the ordinary course of business.

7.    Event of Default. An "Event of Default" shall exist under this Agreement upon the happening of any of the following events or conditions, without demand or notice from any Secured Party:

(a)    the Borrower's failure to observe or perform any of its agreements, warranties, representations or covenants in this Agreement if such failure is not cured within 10 business days of Borrower's receipt of notice of such failure; or

(b)    the occurrence of any Event of Default, as defined in the Note.

8.    Rights and Remedies on Event of Default.

(a)    During the continuance of an Event of Default, the Secured Party shall have the right, with or without notice to Borrower (as provided below), as to any or all of the Collateral, by any available judicial procedure, or without judicial process (provided, however, that it is in compliance with the Uniform Commercial Code (the "UCC")), to exercise any and all rights afforded to a secured party under the UCC or other applicable law. Without limiting the generality of the foregoing, the Secured Party shall have the right to sell or otherwise dispose of all or any part of the Collateral, either at public or private sale, in lots or in bulk, for cash or for credit, with or without warranties or representations, and upon such terms and conditions, as the Secured Party may deem advisable, and the Secured Party shall have the right to purchase at any such sale. Borrower agrees that a notice sent at least ten (10) business days before the time of any intended public sale or of the time after which any private sale or other

SECURITY AGREEMENT

disposition of the Collateral is to be made shall be reasonable notice of such sale or other disposition. The proceeds of any such sale, or other Collateral disposition shall be applied, first to the reasonable expenses of retaking, holding, storing, processing and preparing for sale, selling, and the like, and to the Secured Party's reasonable attorneys' fees and legal expenses, and then to the Obligations and to the payment of any other amounts required by applicable law, after which the Secured Party shall account to Borrower for any surplus proceeds. If, upon the sale or other disposition of the Collateral, the proceeds thereof are insufficient to pay all amounts to which the Secured Party is legally entitled, Borrower shall be liable for the deficiency, together with interest thereon at the rate of 18% per annum, and the reasonable fees of any attorneys the Secured Party employs to collect such deficiency; provided, however, that the foregoing shall not be deemed to require the Secured Party to resort to or initiate proceedings against the Collateral prior to the collection of any such deficiency from Borrower. To the extent permitted by applicable law, Borrower waives all claims, damages and demands against the Secured Party arising out of the retention or sale or lease of the Collateral or other exercise of the Secured Party's rights and remedies with respect thereto (except claims, damages and demands relating to the negligence of willful misconduct of any of the Secured Party).

        (b)    Any sale, whether under any power of sale hereby given or by virtue of judicial proceedings, shall operate to divest all Borrower's right, title, interest, claim and demand whatsoever, either at law or in equity, in and to the Collateral sold, and shall be a perpetual bar, both at law and in equity, against Borrower its successors and assigns, and against all persons and entities claiming the Collateral sold or any part thereof under, by or through Borrower, its successors or assigns.

        (c)    Borrower appoints the Secured Party, and any officer, employee or agent of the Secured Party, with full power of substitution, as Borrower's true and lawful attorney-in-fact, effective as of the date hereof, with power, in its own name or in the name of Borrower, during the continuance of an Event of Default, (i) to endorse any Note, checks, drafts, money orders, or other instruments of payment in respect of the Collateral that may come into the Secured Party's possession, (ii) to sign and endorse any drafts against Borrower, assignments, verifications and notices in connection with accounts, and other documents relating to Collateral; (iii) to pay or discharge taxes or Liens at any time levied or placed on or threatened against the Collateral; (iv) to demand, collect, issue receipt for, compromise, settle and sue for monies due in respect of the Collateral; (v) to notify persons and entities obligated with respect to the Collateral to make payments directly to the Secured Party; and, (vi) generally, to do, at the Secured Party's option and at Borrower's expense, at any time, or from time to time, all acts and things which the Secured Party deem reasonably necessary to protect, preserve and realize upon the Collateral and the Secured Party's security interest therein to effect the intent of this Agreement, all as fully and effectually as Borrower might or could do; and Borrower hereby ratifies all that said attorney shall lawfully do or cause to be done by virtue hereof. This power of attorney shall be irrevocable as long as any of the Obligations are outstanding.

        (d)    All of the Secured Party's rights and remedies with respect to the Collateral, whether established hereby or by any other agreements, instruments or documents or by law shall be cumulative and may be exercised singly or concurrently.

9.    Secured Party's Rights; Borrower Waivers.

(a)    The Secured Party's acceptance of partial or delinquent payment from Borrower under any Note or hereunder, or the Secured Party's failure to exercise any right hereunder, shall not constitute a waiver of any obligation of Borrower hereunder, or any right of the Secured Party hereunder, and shall not affect in any way the right to require full performance at any time thereafter.

(b)    The Borrower waives during the continuation of an Event of Default, to the fullest extent permitted by law, (i) any right of redemption with respect to the Collateral, whether before or after sale hereunder, and all rights, if any, of marshaling of the Collateral or other collateral or security for the Obligations; (ii) any right to require any Secured Party (A) to proceed against any person or entity, (B) to exhaust any other collateral or security for any of the Obligations, (C) to pursue any remedy in such Secured Party's power, or (D) to make or give any presentments, demands for performance, notices of nonperformance, protests, notices of protests or notices of dishonor in connection with any of the Collateral; and (iii) all claims, damages, and demands against any Secured Party arising out of the repossession, retention, sale or application of the proceeds of any sale of the Collateral.

10.    Termination of Security Interest.  Upon satisfaction of the Obligations, the security interest and Lien granted herein shall terminate and all rights to the Collateral shall revert to the Borrower.  Upon any such termination, the Secured Party shall authenticate and deliver to the Borrower such documents as the Borrower may reasonably request to evidence such termination.

11.    Miscellaneous.

(a)    Amendment and Waiver.  Any term of this Agreement may be amended and the observance of any term of this Agreement may be waived (either generally or in a particular instance and either retroactively or prospectively), with the written consent of the Secured Party and Borrower.

(b)    Notices.  Unless otherwise provided, all notices and other communications given or made pursuant hereto shall be in writing and shall be deemed effectively given:  (i) upon personal delivery to the party to be notified, (ii) when sent by confirmed facsimile if sent during normal business hours of the recipient, if not so confirmed, then on the next business day, (iii) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid or (iv) one (1) day after deposit with a nationally recognized overnight courier, specifying next day delivery, with written verification of receipt. All communications shall be sent to the respective parties at the following addresses (or at such other addresses as shall be specified by notice given in accordance with this Section 11(b)):

To:                    Sheet Pile, LLC
                       c/o Roberto Redondo Wendt
                       701 Margarita Avenue
                       Coronado, CA 92118

**SECURITY AGREEMENT**

To                          Douglas Ramsey
                            2817 Geronimo Trail
                            Austin, TX 78734

(c)     Successors and Assigns from Note.  This Agreement shall be binding upon and inure to the benefit of, the successors and assigns of the parties hereto, including, without limitation, all future holders of the Note.  The rights and obligations under this Agreement may not be assigned except to the assignee of a Note.

(d)     Governing Law.  This Agreement shall be governed by and interpreted and determined in accordance with the laws of the State of Texas (excluding the laws and rules of law applicable to conflicts or choice of law).

(e)     Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(f)     Titles and Subtitles.  The titles and subtitles used in this Agreement are used for convenience only and are not to be considered in construing or interpreting this Agreement.

(g)     Severability.  If one or more provisions of this Agreement are held to be unenforceable under applicable law, such provision shall be excluded from this Agreement and the balance of the Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms.

(h)     Venue.  Borrower and Secured Party agree that all actions or proceedings arising in connection with the Note shall be tried and litigated only in the state and federal courts located in state of Texas or Borrower waives any right it may have to assert the doctrine of *forum non conveniens* or to object to such venue, and consents to any court ordered relief.  Borrower waives personal service of process and agrees that a summons and complaint commencing an action or proceeding in any such court shall be promptly served and shall confer personal jurisdiction if served by registered or certified mail to Borrower.  The choice of forum set forth herein shall not be deemed to preclude the enforcement of any judgment obtained in such forum, or the taking of any action hereunder or the Note to enforce the same, in any appropriate jurisdiction.

(i)     Definitions.  Except as set forth in Section 1 or as otherwise defined herein, capitalized terms shall have the meaning set forth in the Note.

(j)     Entire Agreement.  This Agreement, and the documents referred to herein constitute the entire agreement between the parties hereto constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof.

[Remainder of Page Intentionally Left Blank]

SECURITY AGREEMENT

IN WITNESS WHEREOF, this Agreement has been executed by the parties hereto as of the date first above written.

**BORROWER:**

**SHEET PILE, LLC**

By: _____
Name: Roberto Wendt
Title: Member

**SECURED PARTY:**

**DOUGLAS RAMSEY**

_____

SECURITY AGREEMENT

## EXHIBIT A

### DESCRIPTION OF COLLATERAL

The Collateral consists of all of Borrower's right, title and interest in and to the following:

1. All open Receivables of Borrower as of the date of this Agreement.
2. Specifically, all Receivables due and open on attached Samuel Roll Form Group PO 2PP004775.
3. All current inventory of Borrower, in stock or in production, including steel and Wadit sealant.
4. All equipment, tools, machinery, and other supplies held by Borrower.

Notwithstanding the foregoing, no security interest is granted in any contract rights, licenses or intellectual property if such grant would cause a default enforceable under applicable law or if a third party has the right enforceable under applicable law to terminate Borrower's rights under or with respect to any such contract, license or intellectual property and such third party has exercised such right of termination.

Exhibit C: Courtesy Reminder

Douglas Ramsey
P.O. Box 340395
Austin, TX 78734

December 10, 2020

Sheet Pile, L.L.C.
c/o Roberto Redondo Wendt
701 Margarita Avenue
Coronado, CA  92118

Dear Sheet Pile, L.L.C. c/o Roberto Redondo Wendt:

This letter is in reference to the personal loan which I made to you and your company in November 2019. Per our mutual Secured Promissory Note and Security Agreement, both from November 21, 2019, please kindly be reminded that "All outstanding amounts shall be due and payable on demand on December 21, 2020." This letter serves as said demand that all payments be received in full on or before the date of 12/21/2020.

The following list summarizes the amount that is currently due to me from Sheet Pile LLC from the 2019-November loan agreement, as of December 10, 2020:

Principal: $100,000.00.
Interest: $10,000.00 ("one-time, flat rate, interest payment"), plus:
Interest Charges: 12 months, January 10 through December 10, at $411.67 per month: $4,940.04.
Received as prepayments during the course of the loan: $0.00.
Total due as of 12/10/2020 on this note: $114,940.04.

Please note that I have sent the updated balance due to your attorney, Kevin Terrazas, monthly, during the life of the loan.

Per Section 3 of the note, this is "payable at the address designated in Section 14 or such other place as Holder may from time to time designate in writing." For your convenience, I would like to propose the following options for your payment, in this preferred order:

1)  Wire transfer, safest for all, due to ongoing Covid pandemic precautions.
2)  Check to be mailed. Please consider this letter as notice that my mailing address has changed to the one listed in the header of this letter.

Please let me know which method you prefer, as I will need to provide the wire transfer details if you choose that method. Whichever method is chosen, the funds must still be received by the end of the day on 12/21/2020.

Thank you for the opportunity to financially assist your company and I look forward to closing this out.

Douglas Ramsey

Cc: Kevin Terrazas

EXHIBIT D: CORRESPONDENCES

 Gmail

Doug Ramsey <thedougramsey@gmail.com>

---

**Three possible payment plans**

---

**Doug Ramsey** <thedougramsey@gmail.com>                                                Tue, Dec 22, 2020 at 10:17 AM
To: Kevin Terrazas <kterrazas@clevelandterrazas.com>

Thanks, Kevin.

I really appreciate it. This is getting much closer. I made just a few edits for your consideration, attached. Also, as a side offer, I would be willing to forego the additional interest charges (about $6000 and counting), if the entire $110,000 could be found and paid by 12/31/2020, plus I would sign the attached settlement agreement (just editing the payment in full). I realize that may be difficult, but I wanted to at least offer this cost-saving option to help both sides. Either way, please let me know if you need my PO Box address or wiring details for payments. Thanks, Kevin.

[Quoted text hidden]

---

📄 **20-12___ -- Ramsey Settlement Agreement (3).docx**
37K

 Gmail

Doug Ramsey <thedougramsey@gmail.com>

## Three possible payment plans

**Kevin Terrazas** <kterrazas@clevelandterrazas.com>                                          Mon, Jan 4, 2021 at 11:32 AM
To: Doug Ramsey <thedougramsey@gmail.com>

Hi Doug,

Still waiting on Rob.  Will continue to follow up with him.

Best,

Kevin

KEVIN J. TERRAZAS

CLEVELAND | TERRAZAS PLLC

303 Camp Craft Rd., Suite 325

West Lake Hills, Texas 78746

kterrazas@clevelandterrazas.com

512-680-3257

Board Certified, Civil Appellate Law—Texas Board of Legal Specialization

CONFIDENTIALITY NOTICE

This e-mail and any attachments may contain confidential information which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, disclosure, or taking of any action in reliance on or response to the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this email in error, please promptly notify the sender by reply e-mail, and destroy all copies of the email and attachments.

---

**From:** Doug Ramsey <thedougramsey@gmail.com>
**Sent:** Monday, January 4, 2021 11:08 AM
**To:** Kevin Terrazas <kterrazas@clevelandterrazas.com>
**Subject:** Re: Three possible payment plans

Good morning Kevin,

I hope you had a good vacation. Where are we on revisions to this agreement, so we may get this closed out? Thanks for any update.

On Wed, Dec 30, 2020 at 10:18 AM Doug Ramsey <thedougramsey@gmail.com> wrote:

> Hi Kevin,
>
> Checking to see if there are any further updates here? I wanted to make sure I hadn't missed any correspondence, as it feels as if we are close to an agreement here. As we are close to the 12/31 date, we could look at extending that by a week or so for everyone's comfort, if needed. Thank you for your time.
>
> On Wed, Dec 23, 2020 at 11:11 AM Doug Ramsey <thedougramsey@gmail.com> wrote:
>
>> Hi Kevin, sorry for the confusion. Beyond the flat $10K, I am talking about the open interest charges to date (12 x 411.67 = $4,940.04), plus the $1000 now due for this month, so $5,940.04 as of now. Hopefully that makes sense?
>>
>> On Wed, Dec 23, 2020 at 11:06 AM Kevin Terrazas <kterrazas@clevelandterrazas.com> wrote:
>>
>>> Thanks Doug.  I am reviewing and will talk to Rob.  But I was confused about the statement about $6,000 in interest charges.  To my understanding there are no additional interest charges except for $1,000 for this month.  The interest charge is $10,000 and that was for the entirety of the loan until the maturity date.  Is there a provision you are referring to that I did not see?
>>>
>>> Best,
>>>
>>> Kevin

KEVIN J. TERRAZAS

CLEVELAND | TERRAZAS PLLC

303 Camp Craft Rd., Suite 325

West Lake Hills, Texas 78746

kterrazas@clevelandterrazas.com

512-680-3257

Board Certified, Civil Appellate Law—Texas Board of Legal Specialization

CONFIDENTIALITY NOTICE

This e-mail and any attachments may contain confidential information which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, disclosure, or taking of any action in reliance on or response to the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this email in error, please promptly notify the sender by reply e-mail, and destroy all copies of the email and attachments.

---

**From:** Doug Ramsey <thedougramsey@gmail.com>
**Sent:** Tuesday, December 22, 2020 10:17 AM
**To:** Kevin Terrazas <kterrazas@clevelandterrazas.com>
**Subject:** Re: Three possible payment plans

Thanks, Kevin.

I really appreciate it. This is getting much closer. I made just a few edits for your consideration, attached. Also, as a side offer, I would be willing to forego the additional interest charges (about $6000 and counting), if the entire $110,000 could be found and paid by 12/31/2020, plus I would sign the attached settlement agreement (just editing the payment in full). I realize that may be difficult, but I wanted to at least offer this cost-saving option to help both sides. Either way, please let me know if you need my PO Box address or wiring details for payments. Thanks, Kevin.

On Mon, Dec 21, 2020 at 6:57 PM Kevin Terrazas <kterrazas@clevelandterrazas.com> wrote:

Doug,

Here is another draft that tries to harmonize the differing positions.  Let me know if this would work.

Best,

Kevin

KEVIN J. TERRAZAS

CLEVELAND | TERRAZAS PLLC

303 Camp Craft Rd., Suite 325

West Lake Hills, Texas 78746

kterrazas@clevelandterrazas.com

512-680-3257

Board Certified, Civil Appellate Law—Texas Board of Legal Specialization

CONFIDENTIALITY NOTICE

This e-mail and any attachments may contain confidential information which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, disclosure, or taking of any action in reliance on or response to the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this email in error, please promptly notify the sender by reply e-mail, and destroy all copies of the email and attachments.

---

**From:** Doug Ramsey <thedougramsey@gmail.com>
**Sent:** Friday, December 18, 2020 2:29 PM
**To:** Kevin Terrazas <kterrazas@clevelandterrazas.com>
**Subject:** Re: Three possible payment plans

Hi Kevin,

Attached are the red line edits, as we discussed. Please review at your convenience. Thanks.

On Fri, Dec 18, 2020 at 12:47 PM Kevin Terrazas <kterrazas@clevelandterrazas.com> wrote:

> Doug,
>
> Thanks.  Take a look at the attached and let me know if you have any concerns.
>
> Best,
>
> Kevin
>
> Kevin J. Terrazas
>
> Cleveland | Terrazas PLLC
>
> 303 Camp Craft Rd., Suite 325
>
> West Lake Hills, Texas 78746
>
> kterrazas@clevelandterrazas.com
>
> 512-680-3257
>
> Board Certified, Civil Appellate Law—Texas Board of Legal Specialization
>
> CONFIDENTIALITY NOTICE
>
> This e-mail and any attachments may contain confidential information which is protected by the attorney-client privilege. The information is intended only for the use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, disclosure, or taking of any action in reliance on or response to the contents of this information is strictly prohibited. Any unauthorized interception of this transmission is illegal. If you have received this email in error, please promptly notify the sender by reply e-mail, and destroy all copies of the email and attachments.

**From:** Doug Ramsey <thedougramsey@gmail.com>
**Sent:** Friday, December 18, 2020 11:31 AM
**To:** Kevin Terrazas <kterrazas@clevelandterrazas.com>
**Subject:** Three possible payment plans

Hi Kevin,

Thanks so much for your call today. After waiting patiently all year, it was a lot to digest. I hope I didn't come across as too resistant to options. Rob has been able to get emergency funding for large payments like these in the past, and if motivated, hopefully he can do so here.

Please see the attached for three possible payment plans, using what we discussed. Obviously, none of these are yet binding, and I am open to discussing these further. Here are the key takeaways:

Option A- Paid in full by 12/21/20, per the original agreement, and I'd fully consider an NDA where I don't talk to Norman about Rob or his companies for one year from the full payment date. This one is cheapest and resolves everything quickest.

Option B- Pays 50% by 12/21/20, and $20K per month, and I'd consider an NDA where I don't talk to Norman about Rob or his companies for six months from the final payment date. All is paid by March, but adds about $3400 to the total.

Option C- Pays 35% by 12/21/20, and $15K per month. All is paid by May, but adds about $6000 to the total. Not keen on an NDA with this option, as this would stretch the loan out to an 18-month period in total.

Clearly, the faster these are paid, the less interest charges Rob will incur. Please consider any emergency funding to get one of these options going, and let's discuss as soon as possible? Thanks, Kevin.

-Doug Ramsey

EXHIBIT E: FINAL DEMAND

Douglas Ramsey
P.O. Box 340395
Austin, TX 78734

January 08, 2021

Sheet Pile, L.L.C.
c/o Roberto Redondo Wendt
701 Margarita Avenue
Coronado, CA  92118

Dear Sheet Pile, L.L.C. c/o Roberto Redondo Wendt:

This letter is in reference to the personal loan which I made to you and your company in November 2019. Per our mutual Secured Promissory Note and Security Agreement ("Note" and "Agreement"), both from November 21, 2019, please kindly be reminded that "All outstanding amounts shall be due and payable on demand on December 21, 2020." The letter I sent to you and your attorney, Kevin Terrazas on 12/10/2020 served as said demand that all payments be received in full on or before the date of 12/21/2020.

From the Secured Promissory Note, "Section 5: Default": Remedies: "(a) Borrower shall be in default under this Note upon the happening of any condition or event set forth below…: (i) Borrower's failure to pay any payment of principal or interest as and within ten (10) days of when due in accordance with the terms of this Note."

From the Security Agreement, "Section 7. Event of Default. An "Event of Default" shall exist under this Agreement upon the happening of any of the following events or conditions, without demand or notice from any Secured Party: … (b) the occurrence of any Event of Default, as defined in the Note."

As of 9:00am CST on the date of this letter, no payments have been received by me on this Note and Agreement at either the address listed above, or transferred into my bank account. Therefore, according to our mutual Secured Promissory Note, the Borrower is now in default.

However, as you likely know, I have been working with your attorney to come to a mutual payment schedule agreement to amend these agreements to allow you extra time to pay these. We were very close to an agreement in my opinion, and my last offer was sent to him on 22-Dec-2020. I have not received another offer to date. The Note says: "In the event that this Note is collected in whole or in part through suit, arbitration, mediation, or other legal proceeding of any nature, then and in any such case there shall be added to the unpaid principal amount hereof all reasonable costs and expenses of collection, including, without limitation, reasonable attorney's fees." I have been patient with this loan for over a year, but now this is in default and we both need to resolve this. Neither of us want to add legal fees etc to this loan. I propose we find a way for us to avoid this. Therefore, by **01/18/2021** (ten days from today), one of the following **must** occur:

1) Pay all payments due (below) in full, thereby terminating the security interest, OR:
2) Finalize and execute a mutually agreeable payment plan agreement.

The following list summarizes the amount that is due to me from Sheet Pile LLC from the 2019-November loan agreement, as of January 10, 2021:

Principal: $100,000.00.
Interest: $10,000.00 ("one-time, flat rate, interest payment"), plus:
Interest Charges: 13 months, 10-Jan, 2020 through 10-Jan, 2021, at $411.67 per month: $5,351.71, plus:
Additional flat rate interest charge, "per month (or portion of month) after the Maturity Date": $1,000.00
Received as prepayments during the course of the loan and after Maturity Date: $0.00.
Total due as of 01/10/2021 on this note: <u>$116,351.71.</u>

Please note that I have sent the updated balance due to your attorney, monthly, during the life of the loan.

Per Section 3 of the note, this is "payable at the address designated in Section 14 or such other place as Holder may from time to time designate in writing." Please consider this letter as a reminder notice that my mailing address has changed to the one listed in the header of this letter. For your convenience, I would like to continue to propose the following two options for your payment(s), in this preferred order:

1) Wire transfer, safest for all, due to ongoing Covid pandemic precautions.
2) Check(s) to be received at the above address.

Please let me know which method you prefer, as I will need to provide the wire transfer details if you choose that method.

Thank you for the opportunity to financially assist your company and I look forward to closing this out.


Douglas Ramsey


Cc: Kevin Terrazas