# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **DOUGLAS RAMSEY,** | § | |
| *Plaintiff* | § | |
| | § | |
| **v.** | § | **No. A-21-CV-00331-LY** |
| | § | |
| **SHEET PILE, LLC,** | § | |
| *Defendant* | § | |
| | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court is Defendant Sheet Pile LLC's Application for Preliminary Injunction, Dkt. 56, and all related pleadings. The district court referred this matter to the undersigned for report and recommendation. The undersigned held an evidentiary hearing on August 31, 2022. Douglas Ramsey and Roberto Wendt testified at the hearing.

## I.   BACKGROUND

This case was originally brought by Douglas Ramsey, who was employed as the Chief Financial Officer for various companies owned by Roberto Redondo Wendt from January 2013 to December 2019. Dkt. 46. These companies included Sheet Pile LLC, Pilepro Steel LP, PilePro LLC, and iSheetPile, LLC. On August 21, 2019, the parties memorialized their relationship in an Employment Agreement. Dkt, 56-2, at 6-9. In late December 2019, Ramsey personally loaned Sheet Pile, LLC $100,000, to meet a payment deadline with the Federal Bankruptcy Court. Dkt 46, at 2. They

1

entered into a Promissory Note and Security Agreement with a maturity date listed as December 21, 2020. Dkts. 46-2, 46-3. Ramsey asserts that in their oral communications, they agreed the maturity date was December 21, 2019, which was acknowledged by Wendt and his attorney, but in the hurry to draft the documents, the date in the Note signed by the parties was incorrect. Dkt. 46, at 3. In December 2019, instead of paying back Ramsey, Sheet Pile terminated him, eliminated his access to emails, and ceased communicating with him. *Id.*

Ramsey sought to enforce the Employment Agreement entitling him to a $44,000 bonus, on December 18, 2019. Dkt. 46-1. Ramsey asserts the bonus was never paid along with $5000 in salary that was owed him upon his termination. Dkt. 46, at 3.

On January 8, 2021, Ramsey sent a demand letter to Sheet Pile demanding payment of the loan and various collateral secured by the Security Agreement, which Sheet Pile also allegedly defaulted on. Dkt. 46-7. Ramsey alleges Sheet Pile disposed of the collateral in contravention of the Security Agreement. Dkt. 46, at 5. Ramsey asserts that Wendt has a history of taking action to thwart creditors' rights. *Id.*

In this suit, he asserts claims of: (1) breach of employment agreement; (2) breach of promissory note and security agreement contract; and (3) fraud.

Sheet Pile alleges counterclaims against Ramsey based upon the Employment Agreement entered into in August 2019. Dkt. 65. Sheet Pile alleges it terminated Ramsey for cause, and that after Ramsey left, it discovered financial improprieties with its books, including: (1) writing checks to himself and to companies controlled

by Ramsey; (2) paying himself $10,000 a month for all of 2019, when his Employment Agreement only allowed him that amount going forward from August; (3) colluding with another employee, Norman Buitta, to siphon tens of thousands of dollars from Sheet Pile, through inventory transactions; and (4) colluding with employee Achim Wunsch to divert hundreds of thousands in funds and customers from Sheet Pile. *Id.*, at 7-10. Sheet Pile also asserts that Ramsey was negligent with transferring company files, causing them to be lost, and forged Wendt's signature, along with other improprieties. *Id.*, at 10.

On June 27, 2022, Ramsey was deposed, and testified about his post-employment work with Sheet Pile competitor SteelWall. *Id.*, at 11. Based on this testimony, asserting it learned for the first time of additional damages caused by Ramsey, Sheet Pile filed its Amended Answer alleging: (1) breach of the noncompete and non-solicitation provisions of the Employment Agreement; (2) fraud/fraudulent inducement; (3) breach of fiduciary duty; (4) unjust enrichment/money had and received; (5) tortious interference with existing and prospective contracts; (6) knowing participation in tortious interference; (7) negligence and negligent misrepresentation; (8) violation of the Texas Uniform Trade Secret Act; (8) and violation of the Defense of Trade Secrets Act. *Id.*, at 12-20.

Sheet Pile then requested the preliminary injunction now before the undersigned.  Sheet Pile requests an injunction based upon its: (1) TUTSA claim; (2) DTSA claim; and (3) breach of contract claim. Dkt. 56.

## II.    ANALYSIS

For a court to issue a preliminary injunction, the moving party must establish by a preponderance of the evidence that: "(1) it is substantially likely to succeed on the merits of its claim; (2) it will suffer irreparable injury in the absence of injunctive relief; (3) the balance of the equities tips in its favor; and (4) the public interest is served by the injunction." *Sahara Health Care, Inc. v. Azar*, 975 F.3d 523, 528 (5th Cir. 2020) (emphasis added). Because "[a] preliminary injunction is an 'extraordinary remedy,'" *Texans for Free Enterprise v. Texas Ethics Commission*, 732 F.3d 535, 536 (5th Cir. 2013), a preliminary injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *Bluefield Water Ass'n, Inc. v. City of Starkville*, 577 F.3d 250, 253 (5th Cir. 2009).

### A.    Likelihood of Success on the Merits

Sheet Pile's request for injunctive relief is based upon the relevant Employment Agreement. The "Non-Competition/Disclosure" portion of the Employment Agreement provides as follows:

(1) It is further acknowledged and agreed that following termination of the Employee's employment with Employer for any reason, Employee shall not hire or attempt to hire any current employees of Employer or any companies controlled, managed, owned, or affiliated with Employer at the time of termination for a period of 2 years.

(2)  It is further acknowledged and agreed that for a period of 2 years following termination of the Employee's employment with Employer for any reason the employee shall not solicit business from current clients or clients who have retained Employer or any companies controlled, managed, owned, or affiliated with Employer at the time of termination [sic] the 6 month period immediately preceding Employee's termination.

4

(3) Employee agrees that he is being provided with highly confidential, trade secret, and proprietary information from Employer and that access to such confidential, trade secret, and proprietary information would not be provided without this non-competition agreement. In addition, employee agrees that he could not do his job without access to this confidential, trade secret, and proprietary information.

(4) Employee agrees that a violation of any of these noncompetition provisions would result in immediate and irreparable harm to which monetary compensation would not provide adequate relief. Employee further agrees that injunctive relief would be appropriate for any violation of any of these noncompetition provisions.

(5) Employee agrees to notify Kevin Terrazas … if Employee receives any job offer or if anyone attempts to communicate with him about Roberto Wendt, iSheetPile LLC, Sheetpile LLC, PilePro GmBH, PilePro LLC, or Solid LLC outside of contact involving normal business operations.

(6) Employee agrees that while he is employed he will not accept employment from another company in the same industry or business as Employer that is not controlled, managed, owned or affiliated with Employer without written approval of Roberto Wendt.

Dkt. 56-2, at 6-8.

1.    Misappropriation Claims

To succeed on the merits of its misappropriation of trade secrets claim, Sheet Pile must show that "(1) a trade secret existed, (2) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means, and (3) the defendant disclosed or used the trade secret without authorization from the plaintiff." *GE Betz, Inc. v. Moffitt-Johnston*, 885 F.3d 318, 325 (5th Cir. 2018) (quoting *CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 273 (5th Cir. 2009)). Under TUTSA a trade secret includes any "compilation," "financial data," or "list of actual or potential customers or suppliers" that derive economic value from "not being generally known to, and not being readily ascertainable" by another person. Tex. Civ. Prac. & Rem.

5

Code § 134A.002(6). Under DTSA a trade secret includes any "compilation[ ]" or "financial ... information" that derives economic value from "not being generally known to, and not being readily ascertainable" by another person. 18 U.S.C. § 1839(3). The existence of a trade secret is a question of fact. *Gen. Univ. Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004). However, in the context of a preliminary injunction, "the trial court does not decide whether the information sought to be protected is a trade secret." *First Command Fin. Plan., Inc. v. Velez*, No. 4:16-CV-01008-O, 2017 WL 2999405, at *6 (N.D. Tex. May 8, 2017). "Rather, it determines whether the applicant has established the information is entitled to trade secret protection until a trial on the merits." *Id.* Texas law provides that both actual and threatened misappropriation may be enjoined. Tex. Civ. Prac. & Rem. Code § 134A.003(a). But any injunctions placing conditions on "employment shall be based on evidence of threatened misappropriation and not merely on the information the person knows." *CAE Integrated, L.L.C. v. Moov Techs., Inc.*, 44 F.4th 257 (5th Cir. 2022) (citing 18 U.S.C. § 1836(b)(3)(A)(i)(I)).

Sheet Pile alleges that Ramsey misappropriated trade secrets including business practices, financial data, customer and vendor lists that Sheet Pile held confidentially, and that Ramsey had access to solely in his role as Sheet Pile's Chief Financial Officer, and subject to his noncompetition agreement. Dkt. 56, at 5. Sheet Pile states that, "Plaintiff has testified that he was hired within six months after his termination from Sheet Pile to work for SteelWall, which Plaintiff has testified is Sheet Pile's only direct competitor." Dkt. 56, at 5 (citing Dkt. 56-2, at 176-78). Sheet

6

Pile asserts that SteelWall hired Ramsey because of his familiarity with Sheet Pile's trade secrets, that he performs similar duties there, and that he has been in contact with Sheet Pile's customers. Dkt. 56, at 7. Sheet Pile does not allege that Ramsey physically removed or downloaded any proprietary information or files.

The evidence presented at the hearing does not support a finding that the broadly defined confidential, proprietary, and trade secret information claimed by Sheet Pile is entitled to trade secret protection. Ramsey points out that he signed the noncompete agreement only after working at Sheet Pile for six and a half years. Dkt. 57, at 2; Dkt. 56-2, at 6-8. He testified at the hearing that he had access to the confidential information identified by Sheet Pile in the years before signing the Agreement and that his job duties did not change after signing. Ramsey also testified that the information was available to other employees and that to his knowledge no other employee had signed a noncompetition or nondisclosure agreement while he was employed at Sheet Pile. To determine whether a trade secret exists, one factor courts consider is the measures taken to guard the secrecy of the information. *Direct Biologics v. McQueen*, No. 1-22-CV-381-SH, 2022 WL 1409984 at *11 (W.D. Tex. 2022). In this case, Sheet Pile did little to protect its alleged trade secrets until just prior to terminating Ramsey.

Ramsey asserts that after his termination, he started his own consulting firm, Lone Star Global, LLC, which provides business management, operations, and accounting services for a variety of industries. Dkt. 57-1. Ramsey claims he was approached by Humphrey Chang to perform low-level accounting and clerical

functions for his company, SteelWall. Ramsey alleges that his job for Chang included coordinating freight and logistics, inventory monitoring, creating invoices, reconciling financial records, and sometimes speaking to customers. *Id.* Ramsey further states that Chang is also a former employee of Sheet Pile who held the same position there as he did, and therefore any alleged "trade secrets" were already known to him. *Id.* Another factor courts consider in determining whether a trade secret exists is the extent which the information is none outside the plaintiff's business and the value of the information to the plaintiff and his competitors. *Direct Biologics*, 2022 WL 1409984, at *11. In this case, the information was already known to competitor Chang and held little additional value to his business.

Sheet Pile makes much of the evidence that while employed by SteelWall, Ramsey has corresponded with customers that were also customers of Sheet Pile. Dkt. 56-2, at 168-70. While a trade secret "may be ... a list of customers," *Rugen v. Interactive Bus. Sys., Inc.*, 864 S.W.2d 548, 552 (Tex. App.—Dallas 1993, no writ), "public policy counsels against imputing trade secret protections to the identities of market participants," *CAE Integrated, LLC*, 2021 WL 6497092, at *4. Ramsey's mere contact with a former Sheet Pile customer does not necessarily implicate disclosure of a trade secret. *See BCOWW Holdings, LLC v. Collins*, No. SA-17-CA-00379, 2017 WL 3868184, at *15 (W.D. Tex. Sept. 5, 2017) (denying injunction because "[c]ustomer relationships do not qualify as trade secrets").

"It is the burden of the party claiming secrecy status to prove secrecy." *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 466 (Tex. App.—Austin

2004, pet. denied). Sheet Pile has failed to carry its burden. The evidence before the undersigned does not support a finding of entitlement to trade secret protection.

Sheet Pile also alleges it is entitled to a preliminary injunction based upon the threatened disclosure of trade secret information to SteelWall. "[T]o establish threatened disclosure, the law requires [Plaintiff] to show disclosure of specific trade secrets would benefit [an employee's new employer]." *St. Jude Med. S.C., Inc. v. Janssen-Counotte*, No. A-14-CA00877-SS, 2015 WL 11438611, at *3 (W.D. Tex. Oct. 30, 2015) (citing *Conley v. DSC Commc'ns Corp.*, No. 05-98-01051-CV, 1999 WL 89955, at *3 (Tex. App.—Dallas Feb. 24, 1999, no pet.)); *see also Cardoni v. Prosperity Bank*, 805 F.3d 573, 590 (5th Cir. 2015) (holding that a district court correctly "made an individualized assessment of whether disclosure had occurred or was likely to occur in this case"). Such a showing can be made by proving that a defendant is "in possession of the information and is in a position to use it." *Fox v. Tropical Warehouses, Inc.*, 121 S.W.3d 853, 860 (Tex. App.—Fort Worth 2003, no pet.). In this case Sheet Pile has failed to do so.

Sheet Pile rests its argument on the fact that Ramsey acknowledged that he was provided with confidential, trade secret, and proprietary information, and that that through his work at SteelWall, he corresponds with customers that were also customers of Sheet Pile. Dkt. 56-2, at 168-70. Ramsey argues that there is no evidence supporting that he actually disclosed trade secrets gained from Sheet Pile. He argues that Chang was already in possession of much of this information, and that Ramsey communicated with Chang's existing customers when they reached out to him with

questions, some of whom happened to also be Sheet Pile's customers. Dkt 56-2, at 187-88.

At the hearing, Roberto Wendt admitted that he had no actual evidence that Ramsey had misappropriated trade secrets from Sheet Pile. As evidence that he had likely done so, Sheet Pile offered an email showing an order from a Sheet Pile customer that withdrew its order at the last minute and bought its product from another source. Hearing Ex. 6. Sheet Pile argues that this customer "must" have shopped its pricing to another supplier and that supplier might have been SteelWall. This is insufficient to establish the likely disclosure of a specific trade secret that would benefit SteelWall. Additionally, if SteelWall was in possession of Sheet Pile's proprietary pricing information, as alleged, the customer would not have had to gather Sheet Pile's pricing information before shopping it to SteelWall. Sheet Pile's proposed inference is insufficient to support a finding that Ramsey disclosed Sheet Pile's trade secrets. "The critical question in issuing the injunction and also the ultimate test on review is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978). Ramsey has been employed with SteelWall approximately two years and Sheet Pile has offered no evidence of his disclosure or likely disclosure of its alleged trade secrets.

Sheet Pile has failed to identify any trade secret Ramsey disclosed to SteelWall or evidence to establish the probability of such a disclosure. Texas law restricts injunctions from "prohibit[ing] a person from using general knowledge, skill, and

experience that person acquired during employment". Tex. Civ. Prac. & Rem. Code § 134A.003(a). Sheet Pile has failed to show its TUTSA and DTSA claims are likely to succeed on the merits.

2. Breach of contract claim

Under Texas law, the elements for a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007). Sheet Pile alleges that Ramsey violated the noncompetition requirements of his Employment Contract. Dkt. 56, at 8. Ramsey asserts the contract is not enforceable as it lacks reasonable limitations as to time, geographical area, and scope of activity, and that he did not breach it. Dkt. 57, at 8.

In Texas, the enforceability of a covenant not to compete is a question of law for the court. *Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir. 2004). The Texas Business and Commerce Code provides that "[e]very contract ... in restraint of trade or commerce is unlawful." Tex. Bus. & Com. Code § 15.05. Thus, "[a]n agreement not to compete is in restraint of trade and therefore unenforceable ... unless it is reasonable." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990). The Texas Covenants Not to Compete Act sets forth two criteria for the enforceability of a noncompete: it must be (1) "ancillary to or part of an otherwise enforceable agreement at the time the agreement is made"; and (2) contain "limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do

11

not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50(a); *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 777 (Tex. 2011) (finding courts should focus on "whether the covenant 'contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee'")

Sheet Pile states that the noncompete is reasonable as to geographic restrictions, duration, and scope, citing the fact that the duration of the agreement is limited to two years following termination. Ramsey states that the Employment Agreement has no geographical limitations and thus is not enforceable. Dkt. 57, at 8. "The lack of geographic restriction in the covenant does not necessarily render the clause unreasonable." *Marquis Software Sols., Inc. v. Robb*, No. 3:20-CV-0372, 2020 WL 955901, at *6 (N.D. Tex. Feb. 27, 2020) (internal citations omitted). Rather, "[t]he permissible breadth of the geographic applicability of a noncompete provision depends both on the nature of the business and the degree of the employee's involvement in the business.*" Providence Title Co. v. Truly Title, Inc.*, 547 F. Supp. 3d 585, 602 (E.D. Tex. 2021). Indeed, noncompetes with restrictions covering a wide geographic area may be reasonable under certain circumstances, such as when it has been clearly established that the business is national in character. *See Daily Instruments Corp. v. Heidt*, 998 F. Supp. 2d 553, 567 (S.D. Tex. 2014) ("Covenants with wide geographic areas have been upheld in Texas courts, especially when the area covered constitutes the employees['] actual sales or work territory."). In this case,

Sheet Pile has not offered sufficient evidence establishing the reasonableness of the lack of geographical restriction. Accordingly, the undersigned finds it is unlikely to be enforceable.

Additionally, the parties dispute not only the enforceability of the noncompete but whether Ramsey violated it. Sheet Pile relies on Ramsey's testimony that he began working with SteelWall within months of leaving Sheet Pile as violating the terms of the Agreement. Dkt. 56-2, at 166-67. Sheet Pile also relies on language in the Employment Agreement stating "Employee agrees to notify Kevin Terrazas … if employee receives any job offer or if anyone attempts to communicate with him about Roberto Wendt … outside of contact involving normal business operations." Dkt. 56-2, at 8.

In response, Ramsey cites to the language of the relevant clause which states, "Employee agrees that while he is employed he will not accept employment from another company in the same company or industry …." Dkt, 56-2, at 8. Ramsey asserts that because he did not accept employment with SteelWall until after he was terminated from Sheet Pile, he did not violate the terms of the noncompete. Additionally, the language requiring Ramsey to notify counsel Terrazas also arguably applies only during Ramsey's term employment with Sheet Pile. Because the language of the Employment Agreement seemingly does not apply outside the duration of Ramsey's employment with Sheet Pile, the undersigned finds that Sheet Pile is unlikely to succeed on the merits of its breach of contract claim.

13

### B.      Irreparable Harm

Sheet Pile argues it will suffer irreparable harm without injunctive relief. It argues it faces irreparable harm by Ramsey's "misappropriation of trade secrets and violation of his noncompete obligations because Plaintiff and his new employer can benefit from Sheet Pile's trade secrets and confidential information without first investing the time, expense, and labor necessary to identify and develop relationships with the customers and vendors that Sheet Pile has developed as well as the business strategies Sheet Pile has implemented." Dkt. 56, at 9. Sheet Pile argues that Ramsey's disclosure of its trade secrets and confidential information to its competitor cannot be remedied by money alone.

Ramsey responds that Sheet Pile and PilePro also employed SteelWall's owner Humphrey Chang, who shared the same confidential information as Ramsey, and thus Ramsey's employment did not benefit SteelWall. Dkt. 57, at 6.

Cases have interpreted "irreparable injury" to exist only if it cannot be undone through monetary remedies. *W. Sur. Co. v. PASI of LA, Inc.*, 334 F. Supp. 3d 764, 791 (M.D. La. 2018). The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. *Dennis Melancon, Inc. v. City of New Orleans*, 703 F. 3d 262, 279 (5th Cir. 2012). While Sheet Pile claims it stands to lose business, goodwill, customer relations, and erosion of its market position, it has failed to articulate any injury it might suffer that could not be addressed with monetary damages. "There can be no irreparable injury where money damages would

adequately compensate a plaintiff." *DFW Metro Line Servs., v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990). Sheet Pile has failed to establish the irreparable injury required for a preliminary injunction to issue.

### C. Balance of Equities

In assessing the third factor relevant to granting an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Courts consider several factors in balancing the equities. Notably, courts consider the threat of disclosure of the trade secrets by defendant, *Cisco Sys., Inc. v. Huwaei Techs.*, 266 F. Supp. 2d 551, 555-58 (E.D. Tex. 2003), whether the injunction will effectively destroy a party's business, *Anadarko Petroleum Corp. v. Davis*, No. H-06-2849, 2006 WL 3837518, at *24 (S.D. Tex. Dec. 28, 2006), and whether denial will cause a loss of current market share or simply reduce prospects for expansion, *Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, No. 4:13-CV-48, 2013 WL 12138593, at *4 (E.D. Tex. 2013).

Sheet Pile asserts that the equities favor enjoining Ramsey from his employment activities with SteelWall, because "it is unlikely a preliminary injunction will destroy Plaintiff or Steelwall." Dkt. 56, at 11. Sheet Pile bases this argument on the fact that SteelWall did not have anyone in his position prior to hiring Ramsey. Sheet Pile further argues that precluding Ramsey from contacting vendors or customers might reduce SteelWall's prospects for expansion but will not cost it market share. SteelWall, however, is not a party to this cause of action. Ramsey is.

Ramsey testified that his contract work for Steelwall makes up the majority of his income. Sheet Pile has not shown that precluding Ramsey from employment activities would not cause him major financial harm. Nor has Sheet Pile shown the threat of or actual disclosure of trade secrets. The balance of equities weigh against granting Sheet Pile a preliminary injunction.

### D.    Public Interest

Lastly the parties dispute whether the public interest weighs in favor of granting the preliminary injunction. Sheet Pile claims a preliminary injunction would serve the public interest by depriving Ramsey of the benefit of "misappropriated trade secrets and violations of the noncompete provisions he is using to benefit himself and his new employer." Dkt. 56, at 11. Ramsey asserts the public interest does not support enjoining an individual from working in an industry he has worked in for over 25 years. Dkt. 57, at 12. The undersigned concurs and finds the public interest would not be served by granting a preliminary injunction and depriving Ramsey of employment.

## III.    RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court **DENY** Defendant Sheet Pile LLC's Application for Preliminary Injunction, Dkt. 56. The referral to the undersigned is **CANCELED**.

## IV.    WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to

16

which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED September 1, 2022.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE