correct?

MR. HUDSON:  I believe that's right.

MR. SCHULZE:  Move to publish Exhibit -- Plaintiff's Exhibit 1 to the jury.

THE COURT:  If it's admitted, you can publish it.

MR. SCHULZE:  Thank you.

Q.    Looking at Plaintiff's Exhibit 1, Mr. Ramsey, do you recognize this document?

A.    I do.

Q.    And is this the promissory note that you were just referencing?

A.    Yes.  For the loan that we're talking about.  Not the original 80,000, but for the current 100,000.

Q.    Correct.  This is the $100,000 loan?

A.    Correct.

Q.    And you said that the previous $80,000 loan was substantially similar?

A.    Almost identical terms other than the amount and the date.

Q.    Okay.  Reflecting back on that $80,000, do you recall how much interest you earned from that note?

A.    I do.  8,000.

Q.    $8,000.  So 10 percent?

A.    Ten percent.  That's right.

A.    If I need the money or want the money.

Q.    And you have to pay interest on that?

A.    Yes.

Q.    And do you have to pay like a monthly mortgage payment then?

A.    It's not so much a mortgage payment, but then that interest becomes the minimum amount due each month.

Q.    Okay.  And so you pay back -- let's say you borrowed the $80,000.  As long as you paid back the interest each month, you didn't have to pay that $80,000 back?

A.    Correct.

Q.    Do you know what the rate of that interest is?

A.    I don't recall what that was.

Q.    Okay.  So Sheet Pile borrowed that $80,000 from you and paid you back everything?

A.    That's right.

Q.    Paid you back the interest as well?

A.    They did.

Q.    When you received that $80,000 back, did you pay off that loan?

A.    Put it right back, yes, within a day.

Q.    So it wasn't out of the ordinary for you in November when Sheet Pile approached you to borrow $100,000?

A.    That's correct.

Q.    Who was it at Sheet Pile that approached you to

borrow this $100,000?

A.    Rob Wendt.

Q.    Is that who had approached you about the $80,000?

A.    It is.

Q.    Let's take a look at this secured promissory note. And I won't make you go through every paragraph like I did the last contract.

A.    Thank you.

Q.    But can you do me a favor and just start at where it says "For value received" and read that first sentence.

A.    Sure.  "For value received, Sheet Pile, LLC, a New Hampshire Limited Liability Company and its successors and assigns, the borrower, hereby promises to pay to the order of Douglas Ramsey, an individual whose address is" -- there's my address -- "an its successors assigns, sometimes referred to the lender or holder according context, the principal sum of $100,000."

        The value received -- oh, just the first sentence.  There you go.

Q.    And so borrower here was defined as Sheet Pile, LLC?

A.    That's correct.

Q.    Did I read that right?

A.    That's right.

Q.    And you were the lender?

A.    That's correct.

Q.    Go ahead and keep reading "The value received"?

A.    "The value received is that lender will transfer $100,000 to the recipient account of the borrower's choosing no later than 25 November 2019."

Q.    Do you recall on what day you sent the $100,000?

A.    I don't remember the exact date, but it was between the 21st and 25th.

Q.    And did you give that money directly to Sheet Pile, or did you send that to somebody else on Sheet Pile's behalf?

A.    No.  I sent it to a bankruptcy trustee that Sheet Pile was having to work with for various reasons.

Q.    And that was at Sheet Pile's direction?

A.    That was at Sheet Pile's direction.

            MR. SCHULZE:  Your Honor, may we approach briefly?

            THE COURT:  You may.

      (At the bench)

            MR. SCHULZE:  Our motion in limine restricts us from discussing other lawsuits and things of that nature. There is a bankruptcy that a different entity, PilePro LLC, was involved in.  Sheet Pile purchased assets from that bankruptcy, and Mr. Ramsey was required to send that $100,000 to that bankruptcy trustee.

            I'd like to -- I'd like to elicit some

than 25 November 2019.

Q. Did you in fact transfer $100,000 to Sheet Pile or someone of their choosing by that deadline?

A. I did.

Q. Look down at number -- section 2 for me, please, talking about interest. Can you read that first sentence for us, please.

A. Sure. "2. Interest. The principal amount of this note shall bear interest ('Interest') which shall be the sum of $10,000 as a one-time, flat-rate interest payment and (ii) the cost of all interest, costs, and fees associated with borrower's personally secured funds. Interest will begin accruing on any unpaid principal balance of this note beginning on November 21, 2019."

Q. So that $10,000 in interest, when did that become earned by you?

A. Immediately, once I had sent the $100,000 wire.

Q. Okay. Can you explain to the jury what was meant by "the cost of all interest, costs, and fees associated with borrower's personally secured funds"?

A. Sure. Well, as I mentioned, the $100,000, I pulled that off of my personal line of credit with the bank. And so the bank would charge me a monthly interest fee. I believe it was $411 or so and change each month that was outstanding. And so each month I would be required

to pay at least that $411 interest back to the bank.  And then Sheet Pile was supposed to reimburse me for that.

Other costs and fees like, for instance, the wire cost I think was a $25 wire fee which Sheet Pile reimbursed as well.  So any costs and fees associated with that line of credit there.

Q.   Did you-all have the same arrangement for that $80,000 note?

A.   We did.

Q.   And I believe your testimony was earlier that Sheet Pile did pay those additional fees for that $80,000 note?

A.   They did.

Q.   Look down to paragraph 3 for me, "Payment of Principal."  Please read that for me, at least the first sentence for now.

A.   "Payment of Principal.  All outstanding amounts shall be due and payable on demand on December 21, 2020 ('Maturity')."

Q.   So the full outstanding payment, the $100,000, was due by December 21st, 2020; is that correct?

A.   That's correct.

Q.   When was the interest payment due?

A.   It would begin accruing immediately.  But it was a one-time deal, so it would also be due on December 21, 2020.

Q.   Your expectation was to be repaid the $100,000, plus the $10,000 in interest, plus the $411 fees that you were incurring, all on December 21st, 2020; is that accurate?

A.   On or before, yes.

Q.   Okay.  Read that next sentence for me, if you will?

A.   "Any unpaid principal or interest will continue accruing interest at an additional flat rate of $1,000 per month or portion of month after the maturity date."

Q.   What did that mean to you?

A.   So that means, after December of 2020, so about 13 months after this loan, if everything had not been paid back to me, then there was going to be an additional basically $1,000 flat-rate late fee, if you will, monthly or a portion of a month after that December date.

Q.   Okay.  Did you negotiate that, or where did that come from?

A.   I think that was already in there.  Sheet Pile or PilePro or Mr. Wendt had borrowed funds from several people over the years, and this was a promissory note that we had used -- revised, obviously, but used from prior loans.

Q.   So that $1,000 fee, what was the purpose of that?

A.   Basically, just as an obvious late penalty if everything wasn't resolved by the required maturity date on here.

Q.   After you weren't paid back this loan by December 21st of 2020, did you expect to receive the $1,000-per-month late fee?

A.   Yes, I did.

Q.   And you used the word "late fee."  This says any unpaid principal or interest will continue accruing interest on an additional flat rate of $1,000 per month.

Did that actually mean interest?

A.   I hate to use the word "interest" here.  Probably should have clarified it a little bit.  Interest to my mind was what the bank was charging me and I was having to pay the bank back each month.  And this interest, this accruing interest, is more or less a late fee that was payable to me for carrying this loan beyond the maturity date.

Q.   After December 21st of 2020, did you continue to -- incurring that $411 that you mentioned earlier to your lender?

A.   I did.

Q.   And that was just because that $100,000 note was still outstanding?

A.   That's right.

Q.   Go to the next section for me, "Prepayment."  Will you read that section for me.

A.   "Prepayment.  Principal and/or interest on this note

from the bankruptcy sale."

Q.   Mr. Terrazas believes that you did Sheet Pile a favor with the loan.  Do you believe that you did a favor for Sheet Pile with the loan?

MR. TERRAZAS:  Your Honor, I'm going to object to the sidebar and testimony from counsel.

THE COURT:  Sustained.

Q.   (BY MR. SCHULZE) The email from Mr. Terrazas states that he believes that you did Sheet Pile a favor.  Did I read that correctly?

A.   You did.

Q.   Do you believe that you were doing Sheet Pile a favor?

A.   I certainly do.

Q.   We've established numerous times that the original loan amount was $100,000, and you haven't received that $100,000 back?

A.   That is correct.

Q.   The original note promised that you would receive interest on your loan of how much?

A.   The flat rate interest of 10,000.

Q.   Okay.  So that brings it to what?

A.   110,000.

Q.   Okay.  You're also incurring a monthly interest amount that you're having to pay the lender, correct?

A.   That's correct.

Q.   And how much that monthly interest amount?

A.   I believe that was about $411.67.

Q.   And when did that payment -- when did that start?

A.   Immediately.

Q.   When was that, immediately?

A.   I'm sorry.  From the beginning of the loan of November [sic] 2020.  There was a prorated month of 290 or so.  And then monthly, from December onward, it was 411 or so.

Q.   So since December 1st of 2020, you've been incurring $411 and some change in fees?

A.   Since December of 2019.

Q.   Excuse me.  2019.

A.   Yes.

Q.   So as of December 21st, 2020, when the note was due, you were owed 12 months worth of that $411 interest?

A.   That's correct.

Q.   And do you happen to know off the top of your head how much that number is at this point?

A.   That would have been roughly another 4900, give or take.

Q.   Okay.  If I told you it was $4,940.04, would that be correct?

A.   I would take that, sure.

Q.   So that's in addition to the $110,000?

A.   That's correct.

Q.   And so that brings us to $114,940.04?

A.   That sounds right.

Q.   Okay.  And I think we established earlier when we were looking at the promissory note that every month that Sheet Pile was late on the payment of that note, they were incurring a late fee of $1,000?

A.   That's correct.

Q.   And that $1,000 is in addition to the $411.67 you were incurring?

A.   Yes.

Q.   So after the note came due at the end of December of 2020, the monthly amount went to $1,411.67?

A.   That's correct.

Q.   And it's fair to say that that's been going on every month since December 21st of 2020?

A.   That's correct.

Q.   That means, as of January 21st, 2021, so a month later, we would just add another $1,411.67 to the note?

A.   That is correct.

Q.   And would you agree with me that that brings it to about $116,351.71?

A.   With that first month, that sounds about right, yes.

Q.   In February of 2021 -- February 21st of 2021, we

would add another 1,411.67?

MR. TERRAZAS:  Objection: leading.

THE COURT:  Sustained.

Q.   (BY MR. SCHULZE) The following month, would you add that amount -- excuse me -- would you add that amount again?

A.   I would add another 1411 to the balance, yes.

Q.   And the following month, the same thing?

A.   Each month, yes.

Q.   As of May of 2023, this month, do you know what the number has grown to?

A.   I would need to do the math again, but I believe in the order of 155 or 160,000.

Q.   If I told you that the math adds up to $155,878.47, would you agree with me?

A.   That sounds right, yes.

Q.   And in addition to that amount, you're owed the $44,000 bonus payment?

A.   That's correct.

Q.   And the $5,000 in payroll that you're missing?

A.   That's correct.

Q.   So adding those two numbers in, would you agree with me that your outstanding balance is $204,878.47?

A.   That sounds right, yes.

Q.   And you filed this lawsuit on March 1st, 2021,

supplies?"

Q.   What kind of documents are we talking about?

A.   At the time I wasn't sure how many electronic documents I had versus physical documents that I needed to turn over, because I was going to of course turn everything over to Mr. Terrazas.  We had a meeting coming up to hand off stuff.  Since I did work remotely from home, I had a lot of paperwork at home that I needed to turn over to him.

Q.   After you were terminated on December 31st of 2019, did you continue working with Mr. Terrazas and Mr. Wendt to hand over all the company documents?

A.   Directly with Mr. Terrazas, yes.

Q.   And part of those were on a hard drive and part of those were physical, or how was that?

A.   That's correct.

Q.   How were the documents?

A.   I had at least one or two large boxes of physical files, and then also I forget how many hundreds or thousands of documents on a hard drive that I also used my own personal hard drive and copied it to that, deleted my personal copy, and then gave him the hard drive to -- him being Mr. Terrazas, to download all of the electronic documents.

Q.   But you received that hard drive back?

in which format I should turn over the Quickbooks files. There are a couple of options, and I can pick the logical options if otherwise not notified."

Q.   And what did he reply to that?

A.   He asked for what options do I recommend.

Q.   And did you offer a recommendation?

A.   I did.  There's a pretty common portable Quickbook file function, and so I went that route with it.

Q.   And did Mr. Terrazas respond to that?

A.   He said "The portable Quickbooks will be fine."

Q.   And after you made that -- after you recommended the portable Quickbooks file, did you in fact turn that file over in that format?

A.   Yes.  That was on that hard drive.

Q.   Okay.  Let's go down to almost the bottom where it begins with "I also really need."  Do you see that section?

A.   I do.

Q.   Can you read that for us.

A.   "I also really need some guarantee that these will be paid out ASAP.  Rob had promised the loan to be paid out in 30 days, then 45.  I need it to not drag out, but I respect the other company commitments."

Q.   And that 30 days and then 45 is what you were referring to earlier where you believe that the

drive and have wiped it, so it is ready for pickup whenever.  I will be out tomorrow and Friday at depositions.  So, if I'm not there, it will be on reception desk."

Q.    What hard drive are they referring to, or what documents are being referred to by Mr. Terrazas?

A.    Sure.   That was the hard drive we mentioned earlier. The hard drive where I had copied any remaining soft copies of corporate documents and put them on my personal hard drive to hand off to Mr. Terrazas.   And then Mr. Terrazas took those documents off there, wiped the hard drive clean, and then I could pick it up from his office.

Q.   And those were all of the corporate documents that you had that related to Sheet Pile; is that correct?

A.    That's correct.  All of the soft copy documents.  I also turned in the physical documents, as we discussed.

Q.    Understood.  Look at Ramsey 0571, the first page, a January 16th, 2020 email.  Can you read the first sentence of Mr. Terrazas's reply to you.

A.    Sure.  "Thanks.  I can confirm that I received a number of documents and a hard drive that you represent contains everything on that sheet."

Q.   So he was just confirming to you that he got what you had delivered to him?