# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **DOUGLAS RAMSEY,** *Plaintiff*, | § § § |
| v. | § § CASE NO. 1:21-CV-00331-DH § |
| **SHEET PILE LLC, LONE STAR GLOBAL, LLC,** *Defendants*. | § § § § |

# O R D E R

Before the Court is Defendant Sheet Pile, LLC's Motion to Disregard Jury Findings, Motion for Judgment Not Withstanding the Verdict, and, in the alternative, Motion to Amend Judgment or for New Trial. Dkt. 172. Having considered the parties' arguments, the evidence, and the relevant caselaw, the Court denies Sheet Pile's motions.

## I. BACKGROUND

Plaintiff Douglas Ramsey initiated this lawsuit following his termination as Chief Financial Officer from Sheet Pile. Dkt. 45, at 2. Ramsey alleged that in late 2019, Sheet Pile experienced financial difficulty and sought a $100,000.00 loan from Ramsey to meet a payment deadline in bankruptcy court. *Id.* at 2. Ramsey loaned Sheet Pile the money on November 21, 2019, via a Secured Promissory Note and a security agreement. *Id.* Ramsey alleges that, rather than paying back the loan, Sheet Pile terminated its relationship with Ramsey, locked him out of his company emails, and wholly ceased communications. *Id.* at 3. Ramsey also alleges that Sheet Pile failed to pay $5,000 of salary and $44,000 for an earned bonus. *Id.* at 3-4. Sheet Pile

provides a different version of events. It claims that Ramsey abdicated his responsibilities, fraudulently spent company money, and overpaid himself. Dkt. 27, at 7–10.

With consent of both parties, the undersigned presided over the jury trial in this case. *See* Dkt. 76. Ramsey brought three claims against Sheet Pile. First, Ramsey alleged that Sheet Pile failed to pay him a $44,000.00 bonus to which he was entitled, breaching the employment contract. Dkt. 45, at 6. Second, Ramsey alleged that Sheet Pile breached the promissory note and security agreement contract by failing to pay $100,000.00 plus interest by December 21, 2020. *Id*. at 6-7. Finally, Ramsey alleged that Sheet Pile committed fraud by representing that it would immediately pay back the $100,000.00 with interest. *Id*. at 7-8. In response, Sheet Pile brought nine counterclaims. Dkt. 65, at 12-20. At the conclusion of the trial, the jury returned a verdict awarding most of the relief sought by Ramsey, along with a favorable response to one of Sheet Pile's counterclaims. Dkt. 153.

Three of the jury's answers are relevant to Sheet Pile's post-verdict motion. First, Jury Question Number 6 asked "What sum of money, if any, paid now in cash, would fairly and reasonably compensate Douglas Ramsey for his damages, if any, that resulted from Sheet Pile, LLC's failure to comply with the promissory note and security agreement contract? Answer in dollars and cents." Dkt. 153, at 3. The jury answered $155,878.47. *Id*. The next question relevant to this dispute is Jury Question Number 12, which asked "Was Douglas Ramsey's failure to comply excused by any previous failure by Sheet Pile to comply with a material obligation of the same agreement?" *Id*. at 6. The jury answered "Yes." *Id*. The final question relevant to this

dispute is Jury Question Number 14, which asked "What sum of money, if any, paid now in cash, would fairly and reasonably compensate Sheet Pile, LLC for its damages, if any, that resulted from Douglas Ramsey's failure to comply with the employment contract. Answer in dollars and cents." *Id.* at 6–7. The jury answered "0." *Id.* at 7.

Sheet Pile challenges these findings in its Motion to Amend the Judgment, alleging various deficiencies in the jury's findings. Upon review, the Court concluded that Ramsey's briefing motion was insufficient for the Court to decide the motion. Dkt. 175, at 1. Upon further briefing by the parties, Dkts. 176 & 177, Sheet Pile's motion is now ripe for review.

## II.   LEGAL STANDARDS

### A.   Judgment as a Matter of Law

"A motion for judgment as a matter of law … in an action tried by jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Orozco v. Plackis*, 757 F.3d 445, 448 (5th Cir. 2014) (quotation marks omitted). Under Federal Rule of Civil Procedure 50(b) "[a] motion for judgment as a matter of law should be granted if there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." *Id.* (citation and quotation marks omitted).

At this stage, a court's "review of a jury's verdict is especially deferential." *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 675 (5th Cir. 2016) (quotation marks omitted). The court "view[s] the entire record in the light most favorable to the non-movant, draw[s] all factual inferences in favor of the non-moving party, and leav[es] credibility determinations, the weighing of evidence, and the drawing of

3

legitimate inferences from the facts to the jury." *Aetna Cas. & Surety Co. v. Pendleton Detectives of Miss., Inc.*, 182 F.3d 376, 378 (5th Cir. 1999) (quotation marks omitted). The court may grant a motion for judgment as a matter of law "[o]nly when the facts and reasonable inferences are such that a reasonable juror could not reach a contrary verdict." *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998). "If reasonable persons could differ in their interpretation of the evidence, the motion should be denied." *Id.*

### B. Motion for a New Trial; Altering or Amending a Judgment

Federal Rule of Civil Procedure 59(a) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "The district court has discretion to grant a new trial under Fed. R. Civ. P. 59(a) where it is necessary 'to prevent an injustice.'" *United States v. Flores*, 981 F.2d 231, 237 (5th Cir. 1993) (quoting *Delta Engineering Corp. v. Scott*, 322 F.3d 11, 15-16 (5th Cir. 1963)). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Jones v. Ruiz*, 478 F. App'x 834, 835 (5th Cir. 2012) (quoting *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999)).

### III. DISCUSSION

Sheet Pile argues that there are three errors in the judgment below warranting the grant of a judgment notwithstanding the verdict. It also contends that an

amended judgment or new trial is warranted due to the jury's failure to award injunctive relief.

### A.   Jury Answer to Question Number 6

Sheet Pile first argues that "[t]he Court should disregard the jury's answer to the question as to the amount of damages Ramsey should recover because of Sheet Pile's breach of the parties' promissory note and security agreement." Dkt 172, at 3. Jury Question Number 6 asked "What sum of money, if any, paid now in cash, would fairly and reasonably compensate Douglas Ramsey for his damages, if any, that resulted from Sheet Pile, LLC's failure to comply with the promissory note and security agreement contract? Answer in dollars and cents." Dkt. 153, at 3. The jury answered $155,878.47. *Id.*

Sheet Pile reasons that the award reflects the jury's mistaken belief that damages should have been calculated based on the date Ramsey filed suit, not at the time of trial. Dkt 172, at 3. Sheet Pile contends that, due to the Court's award of prejudgment interest, the jury's award causes a windfall to Ramsey by allowing him to recover twice for the same injury. *Id.* Ramsey responds that this argument ignores the jury's "substantial discretion in awarding damages within range shown by the evidence." Dkt. 173, at 2 (citing *F.H. Krear Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1260 (2d Cir. 1987)).

The evidence presented at trial was sufficient for the jury to award $155,878.47. Sheet Pile assumes that that figure stems from an erroneous calculation by the jury. But post-verdict, the Court must draw all inferences in favor of the non-

moving party. *Aetna Casualty & Surety Co.*, 182 F.3d at 378. And one reasonable inference is that the jury based its award on something other than a miscalculation of interest. Indeed, the jury was presented with sufficient evidence justifying the *exact* figure they chose. *See, e.g.*, Dkt 176-1, at 161 (Ramsey testifying that "the math adds up to $155,878.47"). To conclude otherwise would require drawing an inference against the jury's verdict, which is prohibited at this stage of review. *Aetna Cas. & Surety Co.*, 182 F.3d at 378.

Accordingly, the Court denies Sheet Pile's request to disregard the answer to Question Number 6.

### B. Jury Answer to Question Number 12

Sheet Pile next argues that the Court should disregard the jury's answer on Question Number 12 and render a judgment notwithstanding the verdict concluding that Ramsey's failure to comply with the employment agreement was not excused by a prior material breach on the part of Sheet Pile. Dkt. 172, at 4. Jury Question Number 12 asked "Was Douglas Ramsey's failure to comply excused by any previous failure by Sheet Pile to comply with a material obligation of the same agreement?" Dkt. 153 at 6. The jury answered "Yes." *Id.*

Sheet Pile contends that the evidence conclusively established that Ramsey did not return all confidential information to Sheet Pile upon his termination in December 2019, breaching the employment agreement. Dkt. 172, at 4. Sheet Pile argues that since the jury found that Sheet Pile's only breach of the employment contract occurred in January 2020, the jury's determination that there was a prior material

breach by Sheet Pile lacked legally and factually sufficient evidence. *Id.* at 4-5. Sheet Pile also argues that "because Ramsey elected to continue his performance under the employment agreement and sue for contract damages, he was not also entitled to claim prior material breach on the part of Sheet Pile as a basis to excuse his own non-performance." *Id.* at 5.

Ramsey disagrees. The continued performance that Sheet Pile references is Ramsey's belief that "he was required to continue honoring the obligations of the employment agreement after the two parted ways in December 2019"—specifically, the non-disclosure of confidential information. Dkt. 173, at 3-5. Ramsey finds two points of error in that argument. First, Ramsey says that this argument puts him in an unwinnable position: either breach the employment agreement by disclosing confidential information, or risk waiving valid legal claims. *Id.* at 3-4. Second, Ramsey argues that Sheet Pile's argument is contradicted by its other contention that Ramsey breached his employment contract in December 2019 by failing to return all confidential information to Sheet Pile. *Id.* at 4-5.

The undersigned finds that the evidence presented at trial was sufficient for the jury to find that Ramsey's nonperformance was excused. For instance, the jury considered Ramsey's testimony that his email was cut off on December 18, 2019. Dkt. 176-4, at 90. The jury also considered arguments that Sheet Pile breached Ramsey's employment agreement by failing to pay him a bonus. *See, e.g.*, Dkt. 147-2, at 17-51 (trial exhibits demonstrating Ramsey's attempt to collect the bonus from Sheet Pile).

From this evidence, a jury could have reasonably concluded that Ramsey's nonperformance was excused.

### C. Jury Answer to Question Number 14

Sheet Pile also claims that the Court should disregard the jury's answer on Question Number 14 and render a judgment notwithstanding the verdict that Ramsey's failure to comply with the employment agreement caused Sheet Pile more than $0.00 in monetary damages. Jury Question Number 14 asked "What sum of money, if any, paid now in cash, would fairly and reasonably compensate Sheet Pile, LLC for its damages, if any, that resulted from Douglas Ramsey's failure to comply with the employment contract. Answer in dollars and cents." Dkt. 153 at 6-7. The jury answered "0." *Id*. at 7. In the preceding questions, the jury found that Ramsey failed to comply with his employment contract and that his failure was excused by Sheet Pile's failure to comply with a material obligation of the same agreement. *Id*. at 6.[1]

The jury's award of $0.00 reflects its earlier finding that Ramsey's nonperformance was excused. Accordingly, for the reasons explained above, *see* Part III.B, the Court will deny Sheet Pile's Motion to disregard the jury's findings with respect to Juror Question 14.

---

[1] At the outset, the Court finds that the jury erred by answering Question 14. The jury answered "Yes" to Question 12, which asked "Was Douglas Ramsey's failure to comply excused by any previous failure by Sheet Pile to comply with a material failure by Sheet Pile to comply with a material obligation of the same agreement?" Dkt. 153, at 6. Following Question 13, the jury verdict form instructed: "If you answered 'Yes' to either Question 12 or Question 13 **do not answer Question 14** and proceed to Question 15." *Id*. (emphasis added). Accordingly, the jury should have skipped Question 14 rather than entering a dollar figure. However, because the zero-dollar figure merely reflects the jury's finding of excuse on Question 12, the Court finds this error to be harmless.

**D. Sheet Pile's Motion to Amend the Judgment or, Alternatively, Order a New Trial**

Finally, Sheet Pile seeks to amend the judgment to provide injunctive relief under Federal Rule of Civil Procedure 59(a) and (e). Dkt. 172, at 9-13. *See* Fed. R. Civ. P. 59(a) ("The court may, on motion, grant a new trial on all or some of the issues … after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."). Sheet Pile argues that an injunction is needed to prevent Ramsey's alleged ongoing breach of the employment agreement by sharing Sheet Pile's confidential information. *Id.* at 9. Ramsey responds that the Court previously determined that Sheet Pile was not entitled to injunctive relief, Dkt. 75, and thereafter Sheet Pile failed to pursue that relief in any manner. Dkt. 173, at 6. The Court previously denied Sheet Pile's Application for a Preliminary Injunction, Dkt. 56, finding that "[t]he evidence presented at the hearing d[id] not support a finding that the broadly defined confidential, proprietary, and trade secret information claimed by Sheet Pile is entitled to trade secret protection." Dkt. 73, at 7; Dkt. 75.

"The elements of a permanent injunction are essentially the same as those for a preliminary injunction, 'with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success.'" *Villas at Parkside Partners v. City of Farmers Branch*, 577 F. Supp. 2d 858, 877 (N.D. Tex. 2008) (quoting *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987)). Those elements are: "(1) an actual success on the merits; (2) a substantial threat of immediate and irreparable harm for which it has no adequate remedy at law; (3) that greater injury will result from denying the injunction than from its being granted; and (4) that an

injunction will not disserve the public interest." *Woodlands Pride, Inc. v. Paxton*, No. CV H-23-2847, 2023 WL 6226113, at *8 (S.D. Tex. Sept. 26, 2023) (internal citation, quotation marks, and brackets omitted).

Nothing produced at trial changes the Court's initial finding at Dkt. 73—that Sheet Pile is not entitled to injunctive relief. Sheet Pile claims there were two new facts produced at trial that should change the Court's initial determination. First, Sheet Pile argues that "the jury plainly found that Ramsey violated the employment when he was supposed to have been honoring it" by merit of the jury's answer to Question 11. Dkt. 172, at 10-11; *see* Dkt. 153, at 6 (answering "Yes" to the question "Did Douglas Ramsey fail to comply with the employment contract?"). But the answer to that Jury Question does not determine *how* Ramsey breached the agreement, nor does it establish that future violations are likely.

Second, Sheet Pile contends that Ramsey divulged at trial that he disseminated Sheet Pile's confidential information to a supposed non-party, Daniel Marley. Dkt. 172, at 11. Sheet Pile argues that "[w]hile [Marley is] touted by Ramsey as a 'paralegal' who performed litigation support before and after trial, Marley is no such thing, but rather, a former PilePro employee who met with Ramsey's current employer, Steel Wall, just months before trial." *Id.* But Sheet Pile's proposed inference—that Marley disclosed trade secrets to SteelWall—is insufficient to warrant an injunction, especially at this stage of the proceedings. "The critical question in issuing the injunction and also the ultimate test on review is whether defendant's past conduct indicates that there is a reasonable likelihood of further violations in the future." *SEC*

*v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978). Ramsey has been employed with Steel-Wall for approximately two years and Sheet Pile has offered no evidence of his disclosure or likely disclosure of its alleged trade secrets.

Ultimately, the question of whether to permanent injunction is left to the Court's sound discretion. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion."). The Court finds that Sheet Pile has failed to establish that a remedy in equity is warranted.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Sheet Pile's Motion to Disregard Jury Findings, Motion for Judgment Not Withstanding the Verdict, and, in the alternative, Motion to Amend Judgment or for New Trial (Dkt. 172) is **DENIED**.

**IT IS FURTHER ORDERED** that the case is **CLOSED**.

**SIGNED** on December 12, 2023.

DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE